856 So.2d 587 (2003)
Nathaniel L. EDWARDS, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00151-COA.
Court of Appeals of Mississippi.
June 17, 2003.
Rehearing Denied September 2, 2003.
Certiorari Dismissed October 3, 2003.
Certiorari Granted December 4, 2003.
*590 Tommy Wayne Defer and David L. Walker, Batesville, attorneys for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before KING, P.J., THOMAS, IRVING and CHANDLER, JJ.
*591 IRVING, J., for the Court.
¶ 1. A Tallahatchie County Circuit Court jury convicted Nathaniel Edwards of depraved heart murder. Edwards has appealed and presents several issues: (1) whether the trial court erred in denying his motion in limine to prevent the assistant district attorney from admitting or eliciting hearsay statements, (2) whether the trial court erred in denying his motion for a mistrial after the assistant district attorney elicited testimony concerning drugs during the testimony of a witness, (3) whether the trial court erred in failing to sustain his motion for a mistrial after a juror stated in open court that Edwards was housed in a correctional facility at which she was employed, (4) whether the trial court erred in denying his motion to suppress a certain statement and clothing seized by the police, (5) whether the trial court erred in overruling his objection to a witness' testimony about statistical data concerning the DNA evidence, and (6) whether the trial court erred in refusing two of his instructions.
¶ 2. Finding error but no reversible error on the first issue and no error on any subsequent issues, we affirm.

FACTS
¶ 3. Nathaniel Edwards, Sr. (the victim) was the eighty-nine-year-old father of Nathaniel Edwards, Jr. (Edwards). Since 1998, Edwards had resided with the victim.
¶ 4. On January 5, 2001, the victim went to visit Carey Hayes to request his assistance in evicting Edwards from the victim's house. Hayes was the victim's neighbor and a deputy police officer for Tallahatchie County. Agitated at the time, the victim told Hayes that Edwards intended to hit the victim in the head and take the victim's money. When the two men arrived at the victim's house, they found Edwards lying on the sofa inebriated. Hayes told Edwards to leave the victim's house. Edwards retorted that he had no money, no place to go, and no one with whom to stay. The victim soon changed his mind and agreed that Edwards could stay in a back room of his house. Hayes escorted Edwards to bed, reassured the victim that the situation was under control, and went back to his house.
¶ 5. On the next morning, a concerned neighbor called the Tutwiler Police Department to investigate the victim's whereabouts. Officer Gregory Buchanan responded by going to the victim's home; there, he found the victim's lacerated dead body on a bed. Buchanan then called the Mississippi Criminal Investigative Bureau for assistance. Investigator Chuck Poe responded and joined Officer Buchanan at the victim's home to assist in the investigation. After the officers had spent several hours of investigation at the victim's home, Edwards was escorted to the Tutwiler Police Department for questioning.
¶ 6. Upon Edward's arrival at the police station, he was read his rights, and Officer Poe asked him if he would relinquish his clothes to the police department for analysis. Edwards complied. After the officers questioned Edwards thoroughly, he was allowed to leave the police station. However, approximately an hour later, Edwards returned and told Officer Doyle Moore, who was on patrol a short distance from the police station, that he wanted to confess to the killing of the victim. Officer Moore instructed Edwards not to say anything further and took Edwards to the Tutwiler Police Station.
¶ 7. After Doyle and Edwards arrived at the station, Doyle called Officer Buchanan and informed him of the situation. Officer Buchanan, who had left the station, returned to the station. When Officer Buchanan arrived back at the station, Edwards *592 told him that Edwards wanted to confess to the killing of Edwards's father. Officer Buchanan read Edwards's Miranda rights to him, and Edwards signed a waiver of rights form. Edwards then gave a statement concerning the killing of his father. In his statement, Edwards wrote, "I want to admit to killing my father in his home yesterday. Exactly how I did it is not very clear in my mind, but it is the truth." Edwards was then handcuffed and transported to jail. Upon his arrival at the jail, Edwards, before several officers and a jailer, again admitted to killing his father.
¶ 8. Edwards was subsequently indicted by a grand jury for depraved heart murder. After the conclusion of a three-day trial, Edwards was convicted of the charge and sentenced, as a habitual offender, to a term of life in prison in the custody of the Mississippi Department of Corrections.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Denial of Motion in Limine
¶ 9. Edwards first complains that the trial court erred when it denied his motion in limine which sought to prevent the State from admitting or eliciting certain hearsay testimony during Edwards's trial. According to Edwards, admission of the hearsay testimony abridged his constitutional right to confront and cross-examine witnesses.
¶ 10. The hearsay of which Edwards complains concerns a statement allegedly made by the victim to Tallahatchie County Deputy Sheriff Carey Hayes. During his testimony, Hayes explained that when the victim asked for his assistance in removing Edwards from his home, the victim stated, "I want you to come get my son out of the house because he is going to hit me in the head and take my money."
¶ 11. The trial court held a pretrial hearing and ruled that the statement would be admissible under Rule 803(3) of the Mississippi Rules of Evidence. Consequently, the court permitted Hayes to testify during the trial about the victim's statement.
¶ 12. "Under this Court's standard of review, the admissibility of evidence rests within the trial court's discretion. Unless [its] judicial discretion is abused, this Court will not reverse [its] ruling." Crawford v. State, 754 So.2d 1211, 1215 (¶ 7) (Miss.2000).
¶ 13. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. M.R.E. 801(c). Hearsay is not admissible except as provided by law. M.R.E. 802.
¶ 14. A hearsay statement may be admitted to prove a declarant's existing mental, emotional or physical condition. M.R.E. 803(3). However, a declarant's statement of memory or belief to prove the fact remembered or believed is not admissible unless it relates to the execution, revocation, identification, or terms of the declarant's will. Id.
¶ 15. We find that the lower court erred in admitting the hearsay statement under subsection three of Rule 803. The statement did not pertain to the declarant's then existing state of mind, emotion, sensation, or physical condition, and even if it did, the victim's then existing state of mind, emotion, etc. was irrelevant. To the contrary, the statement is a statement of belief to prove a fact believed by the victim but does not relate to the execution, revocation, identification, or terms of the victim's will. Thus, Rule 803(3) is not a viable avenue for admission of the hearsay statement.
*593 ¶ 16. The State argues that if we find that the trial court erred in admitting the statement under Rule 803(3), we should find that the statement was admissible under Rule 803(1) or (2), the present sense impression and excited utterance exceptions to the hearsay rule. Both of these exceptions involve statements made in relationship to the occurrence of an event. Our review of the record leaves some doubt as to the occurrence of a predicate event. Therefore, we pretermit the issue of what exception, if any, would permit admission of the statement and find that admission of the statement was harmless error since the properly admitted evidence, as will be discussed further in this opinion, is more than sufficient to support the jury's verdict.

2. Motions for Mistrial
¶ 17. Edwards next argues that the trial court erred when it failed to grant him a mistrial after the assistant district attorney elicited testimony from a witness concerning Edwards's alleged drug use. During his cross-examination of a witness, the assistant district attorney asked her whether Edwards had been smoking crack cocaine at her mother's house. Edwards objected on the basis that the elicited testimony touched upon evidence of other crimes and was highly prejudicial. He also moved for a mistrial. The trial court ruled that this line of questioning was improper and admonished the assistant district attorney for asking a question that he knew was improper. The trial court then told the jury to disregard the question. The question was never answered.
¶ 18. Edwards also contends that the trial court erred by denying his motion for mistrial after a juror, during the State's voir dire, gave the following unresponsive answer to a question by the prosecutor: "First of all ... he [Edwards] is housed at the facility where I work, Tallahatchie County Correctional Facility." The prosecutor had inquired whether any of the jurors were affiliated with law enforcement. The prosecutor asked a few additional questions before Edwards moved for a mistrial. The trial court denied this motion and advised all members of the venire to listen to the questions and respond to the questions given to them.
¶ 19. Our standard of review of the trial court's decision whether to grant a mistrial is abuse of discretion:
Case law unequivocally holds that the trial judge is in the best position for determining the prejudicial effect of an objectionable remark. The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared. Where serious and irreparable damage has not resulted, the judge should admonish the jury then and there to disregard the impropriety.
Coho Resources, Inc. v. McCarthy, 829 So.2d 1, 18 (¶ 50) (Miss.2002) (citing Roundtree v. State, 568 So.2d 1173, 1177-78 (Miss.1990)). The standard of review is the same for a denial of a motion for mistrial based upon potentially prejudicial voir dire statements of potential jurors. Grayson v. State, 806 So.2d 241, 252-253 (¶ 29) (Miss.2001) (citing Evans v. State, 725 So.2d 613, 651 (Miss.1997)).
¶ 20. The rule is well established in the jurisprudence of our state that the jury is presumed to follow an admonition of the trial court to disregard objectionable evidence and that the court's admonition is usually deemed sufficient to remove any prejudicial effect from the minds of the jurors. The jury is presumed to have followed the directions of the trial judge. Walker v. State, 671 So.2d 581, 621-22 (Miss.1995).
*594 ¶ 21. We find that any harm done by the assistant district attorney when he asked the improper question was minimal and was cured by the lower court's instruction to the jury to disregard the question. Therefore, the trial court did not abuse its discretion in denying the motion for mistrial. Likewise, we find that the trial court did not err in not affording any relief when the juror gave the non-responsive response that Edwards was in jail while awaiting trial. The juror's statement did not indicate or otherwise disclose any information about why or on what charge Edwards was being incarcerated. As the State argues, potential jurors know that criminal defendants are sometimes jailed before trial. Although the trial court did not specifically rule on Edwards's somewhat tardy motion for a mistrial following the juror's comments, its failure to grant any relief was tantamount to an adverse ruling. The trial court is in the best position to make this assessment. See McCarthy, 829 So.2d at 18(¶ 50). We therefore, find that the trial court did not abuse its discretion in making the assessment and not granting any relief by way of a mistrial.

3. Motion to Suppress Incriminating Statement
¶ 22. Edwards next argues that the trial court erred when it denied his motion to suppress the statement that he had given to the police on January 6, 2001. Edwards explains that he did not freely and voluntarily confess to law enforcement officers the night of January 6, 2001; therefore, the trial court committed reversible error in admitting his confessions at trial.
¶ 23. Edwards gave the following written statement to Officer Gregory Buchanan of the Tutwiler Police Department: "I want to admit to killing my father in his home yesterday. Exactly how I did it is not very clear in my mind, but it is the truth." Also, while being booked and processed, Edwards advised Officers Buchanan, Johnson, and Moore that he took his father's life. The trial court ruled that Edwards gave the confessions freely and voluntarily.
¶ 24. The general rule is that for a confession to be admissible it must have been given voluntarily and not given because of promises, threats or inducements. Horne v. State, 825 So.2d 627, 639 (¶ 43) (Miss.2002). "[T]he prosecution shoulders the burden of proving beyond a reasonable doubt that the confession was voluntary." Id. This "burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward." Id. Once the trial court has determined that a confession is admissible, the defendant has a heavy burden in attempting to reverse that decision on appeal. Greenlee v. State, 725 So.2d 816, 826 (¶ 26) (Miss.1998).
¶ 25. Our review of the trial court's decision is limited. A determination that a confession is admissible is a finding of fact which is not disturbed on appeal unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence. Hicks v. State, 812 So.2d 179, 191 (¶ 32) (Miss.2002).
¶ 26. Edwards argues that he "did not freely, knowingly, voluntarily and intelligently give confessions to law enforcement officers on January 6, 2001," because "he was in need of medical attention and was intoxicated at the time of his confessions." These assertions by Edwards have no merit.
*595 ¶ 27. First, there exists no corroborative evidence that Edwards's confessions were the result of bargained-for medical treatment which Edwards had requested from the police. Second, there exists no corroborative evidence that Edwards was inebriated to the extent that he was unaware of what he was doing when he gave his confessions. Edwards presented no evidence that he had consumed an amount of alcohol sufficient to render him unable to give the police a voluntary confession. Edwards testified concerning the quantity of alcohol that he said he drank on the day before he gave his confessions. Edwards also testified that he had drunk a can of beer earlier on the day of his confessions. However, neither side presented any evidence concerning whether Edwards drank any alcohol, and if so, how much, during the period of time after he left the police station following the initial interrogation and his return to the station when he gave his confession. The only evidence which suggests that Edwards may have consumed some alcohol during this time frame is the testimony by each of the officers that Edwards smelled like alcohol. However, all of the officers confirmed that Edwards demonstrated sober judgment when he gave his confession. Moreover, the smell of alcohol, in and of itself, does not warrant a finding that Edwards's waiver of his Miranda rights and the resulting confession were both involuntary. See Living v. State, 796 So.2d 1121 (Ala.Crim.App.2000); White v. State, 699 N.E.2d 630 (Ind.1998).
¶ 28. There is no evidence that any sort of promises, threats or inducements were made by the State to Edwards in exchange for his confession. Moreover, the evidence clearly demonstrates that Edwards's confession was a product of his own design. The record indicates that Edwards was taken in by police for questioning on April 6, 2001, at approximately four o'clock in the afternoon. He was not in custody and was free to leave at any time he wished. Edwards left the police station at approximately 10:30 that evening. About an hour later, Edwards returned to the police station, walked to Officer Doyle Moore's car on his own accord, and announced he wished to confess that he had killed his father. Doyle immediately contacted Gregory Buchanan, the chief investigator for the case. Upon Buchanan's arrival, the officers read Edwards his Miranda rights; Edwards signed a waiver of rights form and gave the statements that he contends were improperly admitted into evidence.
¶ 29. We find no abuse of discretion on the part of the trial court in finding that Edwards's confessions were freely and voluntarily given. This issue is wholly without merit.
¶ 30. Edwards next contends that the trial court erred when it denied his motion to suppress evidence resulting from the seizure of his clothing. The clothing at issue, according to Edwards, involved garments that he had been wearing two to three days before his interrogation on January 6, 2001. The State confiscated Edwards's clothing after discovering a questionable red stain on the left pocket of a blue shirt. The State's seizure of Edwards's clothes was executed through a warrantless search by Investigator Chuck Poe of the Mississippi Criminal Investigative Bureau after, according to the State's proof, the State had obtained Edwards's voluntary consent to search.
¶ 31. After the trial court heard testimony from both Edwards and Investigator Poe, it denied Edwards's motion to suppress the clothing. The court found that Edwards voluntarily consented to the search by Poe.
*596 ¶ 32. "When the prosecution attempts to justify a search on the basis of consent, it must demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion." Jackson v. State, 418 So.2d 827, 830 (Miss.1982) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). "Such voluntariness is to be determined from considering the totality of the circumstances surrounding the alleged consent." Id. In determining the voluntariness of a defendant's consent to search, courts must assess whether the defendant was immature and impressionable or experienced and well-educated and whether the defendant was in an excited emotional state, mentally incompetent, or under the influence of drugs or alcohol at the time of the purported consent. Jones v. State ex rel. Mississippi Dept. of Public Safety, 607 So.2d 23, 27 (Miss.1991).
¶ 33. The trial court's finding that Edwards gave his consent for the seizure of his clothes is well supported in the record. During Edwards's interview at the police station, Poe asked him whether he would surrender his clothing to the investigators. This request occurred on the evening of January 6, 2001, the day the victim's body was found. Edwards agreed to relinquish his clothing. During the pretrial hearing, Poe testified about Edwards's consent:
Q: Did you ever ask Mr. Edwards if he would consent to taking his clothes off so you could seize those and have those tested for the substance you just described?
A: Yes, I did.
Q: All right. Did you have a search warrant to do that or was that a warrantless search?
A: That was a consent from Mr. Edwards.
Q: A consent to search by Mr. Edwards?
A: Yes, sir.
Through his testimony, Edwards also confirmed his willingness to relinquish his clothes to the State:
Q: And, he [Investigator Poe] asked you if you could take off those clothes and if he could have them so that they could do an analysis of them, check them for blood and fluids and that kind of stuff; right?
A: Yes.
Q: And, you gave them to him.
A: Yes, I did.
Q: And, you didn't have any problem with that; right?
A: I didn't have any problem with it because I asked them to go by my father's house and get more clothes that I could put on and at that time he said he would.
¶ 34. Further, the evidence demonstrates that Edwards's ability to consent to the search and seizure was not negated by intoxication. When Poe was asked about Edwards's physical demeanor during the interrogation of Edwards, Poe stated, "He seemed to be comprehending everything I was telling him or asking him, no physical signs of impairment as far as alcohol or drugs, and he seemed to be answering questions as I asked him." Moreover, by his own testimony, Edwards confirmed that he had only had one can of beer early that morning before his interrogation. He stated that he did not drink any more alcohol between the time his father's body was found, which was approximately 10:30 in the morning, and the time of his interview and search at the police station, which was at about 4:30 in the afternoon. Therefore, Edwards's contention under this assignment of error lacks merit.

*597 4. Admission of Statistical Data Concerning DNA Evidence

¶ 35. Next, Edwards asserts that the trial court erred when it overruled his objection to the testimony of witness Chris Larsen regarding statistical data of the DNA evidence. This statistical data concerned the probability of whether the deceased was the source of the blood found on Edwards's clothing. Edwards further argues that the trial court's error denied him "his right under the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 26 of the Mississippi Constitution of 1890 to confront and cross-examine witnesses against him."
¶ 36. The State called Larsen, a molecular biologist, to the witness stand. He was qualified, without objection from Edwards, as an expert witness in "molecular biology and forensic DNA analysis." Larsen explained the logistics of DNA testing, his handling of the DNA samples in this case, his findings from the tests that he conducted, and the probability of the genetic matching between the sample of the deceased and the stains from Edwards's clothing. When testifying about the statistical probability of the DNA match, Edwards objected on the ground that Larsen was not a statistician, and thus not qualified to testify about statistical results. Larsen did not make the statistical calculations in the case-at-bar of which he was testifying.
¶ 37. The trial court has discretion in determining whether an expert is qualified to testify. Baldwin v. State, 757 So.2d 227, 230(¶ 11) (Miss.2000) (citing Hall v. State, 611 So.2d 915, 918 (Miss. 1992); Goodson v. State, 566 So.2d 1142, 1145 (Miss.1990)). This Court should not reverse the trial court's ruling unless it can be shown that the trial judge abused his discretion or that the expert was clearly not qualified. Baldwin, 757 So.2d at 230-231(¶ 11) (citing Genry v. State, 735 So.2d 186, 198 (Miss.1999)).
¶ 38. In Hull v. State, 687 So.2d 708, 728 (Miss.1996), our supreme court addressed the issue of admissibility of statistical probabilities in DNA evidence. The Hull court held:
If the witness can put the meaningfulness of a match in terms of strong or weak, then it is unreasonable to prevent the parties from putting on statistical evidence to show how strong or how weak the evidence is. Without this evidence, the ability of the jury to use this evidence may be diminished to such a degree as to be unhelpful to the trier of fact under Rule 703, or more prejudicial in that a jury may think it needs no evidence other than the "conclusion" that the defendant's DNA was found upon the victim's person. Accordingly, we hold that where the trial court finds that evidence of a DNA match is admissible as relevant, the court should also allow scientific statistical evidence which shows the frequency with which the match might occur in a given population.
¶ 39. While acknowledging and conceding to the relevancy of this case law, Edwards attempts to draw an analogy between the case sub judice and Crisp v. Town of Hatley, 796 So.2d 233 (Miss.2001), to demonstrate that the trial court erred when it admitted Larsen's testimony. In Crisp, a drug prosecution case, the supreme court held that the admission into evidence of a certificate of analysis as to the substance found in the defendant's truck, based solely on the testimony of the arresting officer, and without the testimony of the analyst who performed the tests, violated the defendant's constitutionally-guaranteed right to confront and cross-examine *598 witnesses against him. Id. at 235 (¶ 11).
¶ 40. We find that the case sub judice is clearly distinguishable from Crisp. The witness in the case-at-bar did not give hearsay testimony to prove an ultimate fact. In Crisp, the ultimate fact to be proven was that the substance was in fact marijuana. Id. at 234(¶ 1). Proof of this ultimate fact was made by a person who did not himself perform the tests that revealed the nature of the substance. Id. at 234(¶ 3). The Court consequently found a violation of the defendant's right of confrontation because the defendant in Crisp had no means of testing, through cross-examination, the competency and accuracy of the testing procedures used to arrive at the ultimate conclusionthat the substance was in fact marijuana. Id. at 235 (¶¶ 8-9).
¶ 41. In the case-at-bar, we have a very different situation. Larsen, the scientist who made the determination that there was a match between the blood stains and the sample, did testify. While Larsen himself did not work out the probability of incidence after he determined that a match existed, the statistical information of which Larsen testified was a mathematical consequence of the scientific test results that Larsen himself had performed. Moreover, Larsen, who testified to having conducted such statistics in the past, was competent to testify how the statistical results were arrived. Also, Edwards did confront Larsen through cross-examination and had a sufficient opportunity to challenge both the DNA comparison process and Larsen's knowledge of the statistical compilations. We find that the trial court committed no error in admitting Larsen's testimony concerning the statistical frequency of the DNA found in the blood stain samples.
¶ 42. Moreover, Edwards's claim, that the trial court violated his right to confront a witness, was made for the first time on appeal. "Unless timely and specific objection is made to allegedly improper testimony, the objection is deemed waived and may not be raised on appeal." Cavett v. State, 717 So.2d 722, 726(¶ 21) (Miss. 1998) (citing Hall v. State, 691 So.2d 415, 418 (Miss.1997)). We find that Edwards's second ground for objecting to Larsen's testimony is waived.

5. The Refusal of Jury Instruction D-1 and D-5
¶ 43. In his final assignment of error, Edwards argues that the trial court erred when it denied both his request for a peremptory instruction and his request for an instruction on manslaughter.
¶ 44. The standard of review for challenges to jury instructions is as follows:
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Humphrey v. State, 759 So.2d 368, 380(¶ 33) (Miss.2000) (citing Heidel v. State, 587 So.2d 835, 842 (Miss.1991)).
¶ 45. A review of Edwards's discussion in support of his assignment of error clearly demonstrates that Edwards presented no argument in support of the claim that the trial court erroneously denied *599 his peremptory instruction. It is the appellant's duty to provide authority and support for the issues he presents. Rigby v. State, 826 So.2d 694, 707(¶ 44) (Miss. 2002) (citing Hoops v. State, 681 So.2d 521, 526 (Miss.1996)). Issues of error which are unsupported by citation or authority are considered abandoned. Id. Failure to cite relevant authority obviates the appellate court's obligation to review such issues. Simmons v. State, 805 So.2d 452, 487(¶ 90) (Miss.2001) (citing Williams v. State, 708 So.2d 1358, 1362-63 (Miss. 1998)). Therefore, we need not address this contention.
¶ 46. We next address Edwards's argument concerning the denial of his manslaughter instruction. A lesser-included-offense instruction should be given if there is an evidentiary basis in the record that would permit a rational jury to find the defendant guilty of the lesser-included offense and to acquit him of the greater offense. Drake v. State, 800 So.2d 508, 518 (¶ 40) (Miss.2001) (citing Underwood v. State, 708 So.2d 18, 36 (Miss. 1998)). The lesser-included-offense instruction should be granted unless the trial court, and ultimately this Court, can say, viewing the evidence in the light most favorable to the defendant and considering all the reasonable inferences which may be drawn in favor of the defendant from the evidence, that no reasonable jury could find the defendant guilty of a lesser-included offense. Id.
¶ 47. Edwards, as he did in the trial court, advances two reasons why the manslaughter instruction should have been given. First, he asserts that "heat of passion" is shown because the evidence demonstrated that the victim was struck multiple times. Second, he explains that the large disparity between the sentences for murder and manslaughter necessitates an instruction on manslaughter.
¶ 48. We do not find a scintilla of evidence which suggests Edwards was acting in the "heat of passion." The only evidence in the record which attempts to explain the victim's death is the testimony of Carey Hayes. According to Hayes, the decedent explained to him that Edwards wanted the decedent's money and intended to beat him to get it. However, this testimony only demonstrates, if anything, motive or intent of Edwards and not provocation. Moreover, in Edwards's confession, he stated, "I want to admit to killing my father in his home yesterday. Exactly how I did it is not very clear in my mind but it is the truth." There is no indication or assertion by Edwards of provocation in his confession. We find nothing in the record to support the theory that the killing occurred in the heat of passion. Jury instructions are to be granted only where evidence has been presented which supports the instruction. Jackson v. State, 815 So.2d 1196, 1200(¶ 7) (Miss.2002). We therefore find that there exists no evidentiary basis in the record that would permit a reasonable juror to find Edwards guilty of the lesser-included offense of manslaughter. We therefore do not find any merit in Edwards's argument that he was entitled to a manslaughter instruction.
¶ 49. THE JUDGMENT OF THE CIRCUIT COURT OF TALLAHATCHIE COUNTY OF CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IMPRISONMENT AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO TALLAHATCHIE COUNTY.
*600 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.