# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-02204-SCT

*TYRONE McINTOSH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/08/2004 |
| TRIAL JUDGE: | HON. ANN H. LAMAR |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TOMMY WAYNE DEFER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSE' BENJAMIN SIMO |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/10/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1.     Tyrone McIntosh (McIntosh) was indicted in the Circuit Court of the Second Judicial District of Tallahatchie County, Mississippi, in a three-count indictment. The indictment charged McIntosh as follows: (1) Count 1: capital murder, (2) Count 2: aggravated assault, and (3) Count 3: first degree arson. On August 25 to September 2, 2004, McIntosh received a jury trial in the Circuit Court of Tallahatchie County, Circuit Judge Ann H. Lamar,

presiding. The State of Mississippi only prosecuted the capital murder and aggravated assault. McIntosh was convicted of capital murder and aggravated assault and sentenced on Count 1, capital murder, to serve a term of life imprisonment without the possibility of parole, good time or early release and on Count 2, aggravated assault, to serve a term of twenty (20) years consecutively to Count 1 in the custody of the Mississippi Department of Corrections. The trial court denied McIntosh's post-trial motion for J.N.O.V. or new trial. McIntosh now appeals to this Court.

**FACTS**

¶2.     On October 1, 2002, Arthur Featherston (Featherston) and Creola McIntosh (Creola) lived in a home in Webb, Mississippi. On that day the electricity was cut off in the house. Featherston planned to go the store to buy some candles. Prior to leaving the house to buy candles, Featherston gave Creola some money. McIntosh was present and asked Featherston for some of the money. Featherston refused to give McIntosh any money. Featherston helped to support Creola's son, the defendant, McIntosh. When Featherston refused to give McIntosh some money, he became angry. At this point, Featherston stated "I told him I wasn't going to take care of him anymore. He couldn't use my car anymore. I couldn't give him no money anymore. I couldn't help him with his clothes anymore, so he got angry at me and left."

¶3.     Thereafter, Featherston lay down to sleep. Creola woke Featherston sometime later and told him that someone was in the house. According to Featherston, "all of a sudden

2

[Creola] went down on the floor." Featherston turned to see what happened to Creola, and he was hit in the head and knocked unconscious. When Featherston regained consciousness, he smelled smoke, and he saw McIntosh setting the house on fire. Featherston asked McIntosh why he was setting the house on fire. McIntosh told Featherston that he was going to burn down the house and burn Featherston. McIntosh then sprayed Featherston with fluid on his face, head, arms and back, Featherston caught on fire and ran out of the house and jumped into a pile of leaves. Featherston returned to the house and burned his hand on the door knob as he tried to open the front door.

¶4. Vincent Nolan, a volunteer fire fighter who responded to the house fire, saw a blue base to the flames. After the fighting the fire, Nolan found Creola dead in a back bedroom of the house.

¶5. Dr. Steven Hayne, state forensic pathologist, testified as to Creola's cause of death. Dr. Hayne determined that Creola died in a house fire which was secondary to smoke inhalation. Her cause of death was listed as smoke inhalation.

¶6. Nolan assisted Featherston at the scene of the fire and saw what appeared to be second degree burns. Dr. Robert Love, a plastic and reconstructive surgeon at the Greenville Burn Center, stated that Featherston arrived at the Burn Center with extensive burns on his back, arms, face and hands. Featherston's total burn surface area was 51 to 61 percent.

¶7. On appeal, McIntosh raises the following issues:

> **I.     Whether the trial court erred by admitting the testimony of Annie McIntosh.**

3

**II. Whether the trial court erred by admitting overly gruesome photographs, Exhibits 3, 4, 16, and 27, at trial.**

**III. Whether the trial court erred by denying McIntosh's motion for JNOV or in the alternative motion for new trial.**

## DISCUSSION

### I. Testimony of Annie McIntosh.

¶8. McIntosh argues that the trial court erred by admitting hearsay testimony by Annie McIntosh (Annie) at trial. Annie testified that about a week before the death of her mother, Creola McIntosh, Creola told Annie that she and Featherston planned to evict McIntosh from their home. McIntosh objected to the testimony as hearsay. The trial court admitted Annie's testimony at trial under M.R.E. 803(3), then existing mental, emotional, or physical condition. The trial court ruled as follows:

> The State is offering the statements as an exception under Rule 803(3), then existing mental, emotional, or physical condition. The Court, after considering the matter, has had an opportunity to read the case of **State v. Nathaniel Edwards**, which was cited to the Court by the defendant at 856 So.2d 578, a case that came out of this same county last year. The State also pointed the Court to the case of **State v. Boggan**, a case likewise out of this district several years ago. Each of those deal with statements that were admitted under Rule 803(3).
>
> The Court has reviewed the rule. The Court in considering this exception is going to allow the statement as it related to Creola's statement of what she intended to do, that is, if in fact she told her daughter that she intended to put him out of the house.
>
> As far as the further statements as to what McIntosh had told her, what she believed might happen, the Court does not feel that it is proper to be put in, at least not at this point in the trial and past the point of what Creola stated that day that she that she [sic] intended to do, which the Court finds would fall under 803(3), the Court will not allow that further testimony as proffered by the State.

4

In ***Price v. State***, 898 So.2d 641, 653 (Miss. 2005), this Court set out the standard of review

for the admission of evidence:

> "Relevancy and admissibility of evidence are largely within the discretion of
> the trial court, and reversal may be had only where that discretion has been
> abused." ***White v. State***, 742 So.2d 1126, 1134 (Miss.1999). "Furthermore,
> the trial court's discretion must be exercised within the scope of the Mississippi
> Rules of Evidence, and reversal will be appropriate only when an abuse of
> discretion resulting in prejudice to the accused occurs." ***Id***. at 1134. "A trial
> judge enjoys a great deal of discretion as to the relevancy and admissibility of
> evidence. Unless the judge abuses this discretion so as to be prejudicial to the
> accused, the Court will not reverse this ruling." ***Walker v. State***, 878 So.2d
> 913, 915 (Miss.2004)(quoting ***Jefferson v. State***, 818 So.2d 1099, 1104
> (Miss.2002)).

***Price***, 898 So.2d at 653.

¶9.    The Court of Appeals addressed this same hearsay issue in ***Edwards v. State***, 856

So.2d 587 (Miss. Ct. App. 2003). The facts in ***Edwards*** are very similar to the case sub

judice. Prior to his death, Nathaniel Edwards, Sr. (the victim) went to the home of his

neighbor, a deputy police officer. ***Id***. at 591. The victim stated "I want you to come get my

son out of the house because he is going to hit me in the head and take my money." ***Id***. at

592. The next day the victim was found dead with a lacerated head. ***Id***. at 591. The trial

court admitted the evidence under M.R.E. 803(3) and allowed the officer to testify to the

statement. ***Id***. at 592. In ***Edwards,*** the Court of Appeals correctly held that the trial court

erred by admitting the hearsay statement pursuant to M.R.E. 803(3). ***Id***. However, the Court

of Appeals found that the admission of the hearsay statement was harmless error because the

properly admitted evidence was sufficient to support a jury verdict. ***Id***. at 593.

5

¶10.	We find that the statements in the case sub judice and **Edwards** are similar. The statements concerned two victims' desire to evict a defendant from their home prior to their deaths. Like **Edwards**, we find the trial court's admission of the testimony pursuant to M.R.E. 803(3) was error. However, the admission of the hearsay statement was harmless error because the properly admitted evidence was sufficient to support a jury verdict. In short, Featherston was an eyewitness to the fire and the victim of aggravated assault. He and McIntosh were in the burning house together. Featherston confronted McIntosh and asked why he was burning the house. There is also further evidence which will be discussed in more detail in Issue III that was sufficient to support the verdict. Accordingly, the admission of the statement was harmless, and McIntosh's fundamental rights were not violated.

**II.	Photographs.**

¶11.	McIntosh next argues that the trial court erred by admitting gruesome photographs. He claims that the photographs were inflammatory and their probative value did not outweigh their prejudicial effect. In addition, he claims that he was denied a fair trial and due process.

¶12.	The trial court admitted exhibits 3, 4, 16 and 27. Exhibits 3 and 4 were photographs of the deceased, Creola, as she was found in her home. Exhibit 16 was an autopsy photograph of Creola. Exhibit 27 was a photograph which depicted the burn injuries sustained by Featherston.

6

¶13.    This Court set forth the standard of review for the admission of photographs in

***Johnson v. State***, 908 So.2d 100, 106 (Miss. 2005).  This Court held: "The admissibility of

photographs generally lies within the sound discretion of the trial court; and, absent an abuse

of discretion, the court's decision will be upheld on appeal. ***Taylor v. State***, 672 So.2d 1246,

1270 (Miss. 1996)." ***Johnson***, 908 So.2d at 106 (citing ***Jackson v. State***, 784 So.2d 180,

182-83 (Miss. 2001)).  This Court in ***Scott v. State***, 878 So.2d 933, 985 (Miss. 2004), also

held:

> This Court held that the admissibility of pictures of gruesome crime scenes is
> within the sound discretion of the trial court.  ***Chatman v. State***, 761 So.2d
> 851, 854 (Miss.2001).  Reversal of the trial court will occur only where there
> is a clear abuse of discretion. ***Id***.; ***Davis v. State***, 551 So.2d 165, 173
> (Miss.1989).  "The discretion of the trial judge 'runs toward almost unlimited
> admissibility regardless of the gruesomeness, repetitiveness, and the
> extenuation of probative value.'" ***Spann v. State***, 771 So.2d 883, 895
> (Miss.2000) (quoting ***Williams v. State***, 544 So.2d 782, 785 (Miss.1987)).
> Some probative value is the only requirement needed in order to support a trial
> judge's decision to admit photographs into evidence.  ***Jordan v. State***, 728
> So.2d 1088, 1094 (Miss.1998).

The evidentiary value of photographs was considered in ***Spann v. State***, 771 So.2d at 895.

> Photographs are considered to have evidentiary value in the following
> instances:
>
> (1) aid in describing the circumstances of the killing;
> (2) describe the location of the body and cause of death;
> (3) supplement or clarity witness testimony.

***Spann v. State***, 771 So.2d at 895 (quoting ***Westbrook v. State***, 658 So.2d 847 (Miss. 1995)).

¶14.    Here, exhibits 3 and 4 depicted the location of Creola's body at the time of her death

and the circumstances of her death.  Exhibit 16 depicted Creola's face prior to her autopsy.

7

The photograph also showed an injury near her right eye. Dr. Hayne testified that Creola sustained the injury at or about the time of her death. Featherston testified that a group of exhibits, including exhibit 27, were photographs of him taken at the Greenville Burn Center. Exhibit 27 depicted the facial injuries that Featherston sustained in the fire. The photograph shows the extent of his injuries, a necessary element to aggravated assault. We find that the trial court did not err in admitting exhibits 3, 4, 16 and 27 as the probative value outweighed the prejudicial effect. Likewise, none of McIntosh's substantial rights were violated by the admission of these photographs. We find that this issue is without merit.

### III.     Motion for J.N.O.V. or, in the alternative, motion for new trial.

¶15.    The trial court denied McIntosh's motion for J.N.O.V., or in the alternative, motion for new trial. McIntosh now argues on appeal that the trial court erred by denying his motions.[1]

---

[1] McIntosh cites inconsistencies in witness testimony, which he claims make the evidence both legally insufficient and against the overwhelming weight of the evidence to sustain his convictions. "We have routinely held that the jury is the judge of the credibility of a witness." *Price v. State,* 898 So.2d 641, 652(Miss. 2005). "Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." *Id.* Without addressing each specific inconsistency in the testimony argued by McIntosh, we find that the jury heard all the evidence, even the inconsistencies in witness testimony cited by McIntosh, and determined the credibility of the witnesses. Based on the witness testimony and evidence, the jury convicted McIntosh of capital murder and aggravated assault.

As discussed in further detail in Sections 1 and 2 of this issue, we find that both the legal sufficiency and the weight of the evidence support McIntosh's convictions of capital murder and aggravated assault.

1. **J.N.O.V.**

¶16.    A motion for J.N.O.V. challenges the legal sufficiency of the evidence. *McClain v. State*, 625 So.2d 774, 778 (Miss.1993). "[T]his Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id*. at 778. Here, this occurred when the trial court denied McIntosh's motion for J.N.O.V.

¶17.    In *Bush v. State*, 895 So.2d 836, 843 (Miss. 2005) this Court set out the standard of review for legal sufficiency as follows:

> In *Carr v. State*, 208 So.2d 886, 889 (Miss.1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."

*Bush*, 895 So.2d at 843 (quoting *Carr v. State*, 208 So.2d at 889).

**A.  Capital murder.**

¶18.    McIntosh was convicted of capital murder.  Creola was killed during the commission of the crime of arson.  The elements of capital murder applicable to this case are found in Miss. Code Ann. § 97-3-19(2)(e) which provides:

> (2)  The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

> > (e)  When done with or without any design to effect death, by any person engaged **in the commission of the crime of** rape, burglary, kidnapping [sic], **arson**, robbery, sexual battery, unnatural intercourse with any child under the age of twelve

9

(12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies . . . .

¶19.    Here, Nolan, a volunteer fire fighter who responded to the house fire, saw a blue base to the flames.  This base indicated that the fire was started with a fluid such as diesel, kerosene, butane, folic acid or something similar.  After fighting the fire, Nolan found Creola dead in a back bedroom of the house.  Dr. Hayne testified that Creola died as a result of smoke inhalation in a house fire.

¶20.    Featherston testified that when he regained consciousness, he smelled smoke and saw McIntosh setting the house on fire.  Featherston asked McIntosh why he was setting the house on fire.  McIntosh told Featherston that he was going to burn down the house and burn Featherston.

¶21.    Bobby Marion, a prison inmate serving a life sentence, testified that McIntosh told him that he started the fire in the living room of the house.  McIntosh also threw fluid on Featherston which caught Featherston on fire.  As for his mother, McIntosh stated that she died from smoke inhalation.

¶22.    We find that the testimony clearly supports the elements of capital murder during the commission of the crime of arson.  Accordingly, We find that this issue is without merit.

**B.    Aggravated assault.**

¶23.    McIntosh also was convicted of aggravated assault. The aggravated assault pertained to Featherston being set on fire.  The elements of aggravated assault applicable to this case are found in Miss. Code Ann. § 97-3-7(2)(a) which states:

10

(2) A person is guilty of aggravated assault if he

> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . .

¶24. Upon arriving at the scene of the crime, Nolan found Featherston with what appeared to be second degree burns. Dr. Love stated that Featherston arrived at the Burn Center with extensive burns on his back, arms, face and hands. Featherston's total burn surface area was determined to be 51 to 61 percent of his body. Based on a survivability calculation, Dr. Love stated that Featherston's chances of surviving from these injuries were "very slim."

¶25. Featherston testified that he asked McIntosh why he was setting the house on fire. McIntosh told Featherston that he was going to burn down the house and burn Featherston. McIntosh then sprayed Featherston with fluid on his face, head, arms and back, Featherston caught on fire, ran out of the house and jumped into a pile of leaves.

¶26. We find that the evidence clearly met the elements of aggravated assault. Accordingly, we find that this issue is without merit.

**2. New Trial**

¶27. A motion for new trial challenges the weight of the evidence. *Sheffield v. State*, 749 So.2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. *Id*. In *Bush v. State*, 895 So.2d at 843, this Court set out the standard of review for weight of the evidence as follows:

11

When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Bush*, 895 So.2d at 843 (citing *Herring v. State*, 691 So.2d 948, 957 (Miss. 1997)). *See also*

*Sheffield*, 749 So.2d at 127.

¶28. We find that the weight of the evidence supports the jury verdict. After regaining consciousness, Featherston saw McIntosh setting the house on fire. Featherston also stated that McIntosh told him that was going to burn down the house and burn Featherston. McIntosh then sprayed Featherston with liquid which caused Featherston to catch on fire. Featherston sustained burns to 51 to 61 percent of his body.

¶29. Nolan found Creola dead in the house. Dr. Hayne later determined that Creola died from smoke inhalation. Accordingly, we find that this issue is without merit.

## CONCLUSION

¶30. For these reasons, we affirm the judgment of the Circuit Court of the Second Judicial District of Tallahatchie County.

¶31. **COUNT I: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE, GOOD TIME OR EARLY RELEASE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCE IMPOSED IN COUNT II SHALL RUN CONSECUTIVELY TO THAT IMPOSED IN COUNT I AND BOTH SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, PARTICULARLY THE SENTENCE THE APPELLANT IS PRESENTLY SERVING FOR FIRST DEGREE ARSON.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**