971 So.2d 601 (2007)
James Todd LACKIE a/k/a James T. Lackie, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01838-COA.
Court of Appeals of Mississippi.
May 1, 2007.
Rehearing Denied September 18, 2007.
Certiorari Denied December 6, 2007.
*603 Dan W. Duggan, Brandon, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before MYERS, P.J., CHANDLER and ROBERTS, JJ.
CHANDLER, J., for the Court.
¶ 1. James Todd Lackie was convicted of four counts of aggravated assault and sentenced to serve time in the custody of the Mississippi Department of Corrections, following a drunken fight at a party in which a knife was pulled and several of the partygoers were injured. Aggrieved, Lackie appeals, arguing:
I. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT LACKIE'S MOTION FOR A DIRECTED VERDICT, PEREMPTORY INSTRUCTION, OR JNOV.
II. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A JURY INSTRUCTION CONCERNING THE LESSER OFFENSE OF SIMPLE ASSAULT.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On November 3, 2002, Lackie and his friend Matthew Householder attended a party at a home in Caledonia, Mississippi in Lowndes County. Approximately thirty to fifty people were in attendance. Over the course of the evening, Lackie consumed alcohol and became intoxicated. The four victims in this case, Adam Waltman, Wesley Gann, Jordan Graham, and Jon O'Neal were also attendees and had been drinking.
¶ 4. After midnight, a fight broke out. The initial physical altercation began between Casey Pruitt and O'Neal. Accounts vary as to how and why the fight started, but once the initial fight broke out, other partygoers entered the altercation and a cluster of fights ensued.
¶ 5. Lackie entered the fracas and at some point brandished a knife. During the fight, Waltman, Gann, Graham, and O'Neal were injured by the knife. Waltman was stabbed in his left arm; Graham in his chest, lung, hands and wrists; O'Neal in his right eye; and Gann in his jaw and under his eye. Householder was also stabbed in his arm and Lackie suffered a cut to his hand.
¶ 6. Lackie was indicted on five counts of aggravated assault against Waltman, Gann, Graham, O'Neal and Householder pursuant to Section 97-3-7(2)(b) of the Mississippi Code Annotated (Rev.2002). The count of aggravated assault against Householder was later dismissed.
¶ 7. At trial, witnesses testified that Lackie was the only person seen with a knife. Witnesses for the State testified that they saw Lackie fighting with a few of the victims, and some stated they actually *604 saw Lackie stab at least one of the victims with the knife. One of the victims, Gann, testified that he saw a knife in Lackie's hand. Lackie admitted to wielding a knife and cutting some of the men in the fight, but claimed that his actions were done purely in self-defense. He maintained that the knife was only used because he feared for his safety after several men jumped on top of him. Other witnesses refuted this testimony, saying that Lackie was the initial aggressor and had no need to use a knife in the fist fight.
¶ 8. The fight ended when someone shouted that a knife was being used. Witnesses stated that Lackie dropped the knife at that point and fled, but Lackie countered that he did not know how he lost the knife. After the fight, the victims were taken to the hospital, except for Lackie and Householder, who did not seek immediate medical attention. After the knife was recovered at the scene by police investigators, Lackie admitted that it was his.
¶ 9. A jury found Lackie guilty on each of the four counts of aggravated assault. The trial court sentenced Lackie as follows: Count II (the aggravated assault of Gann), twenty years in prison; and on Counts I, III, and IV (the aggravated assault of Waltman, Graham, and O'Neal, respectively) ten years in prison on each count to be served concurrently with each other and consecutively with Count II. The court also imposed a fine of $500 on each count, and five years of post-release supervision.

LAW AND ANALYSIS
I. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT LACKIE'S MOTION FOR A DIRECTED VERDICT, PEREMPTORY INSTRUCTION, OR JNOV.
¶ 10. Lackie asserts that he was entitled to a directed verdict, because the State failed to meet its burden as to every count in the indictment. He maintains that no direct evidence was presented to support the prima facie case, and that the testimony was too inconsistent to support the verdict. Lackie further asserts that the court should have granted a peremptory instruction.
A. Sufficiency of the Evidence
¶ 11. Lackie requested a directed verdict at the close of the State's evidence and a peremptory instruction when trial evidence was concluded. He also filed a motion for a judgment notwithstanding the verdict. All three of these arguments challenge the sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 12. A review of these motions requires consideration of the evidence before the court when the motions were made. This Court "properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the circuit court overruled [Lackie's] motion for JNOV." Id. We view the evidence in a light most favorable to the State, and the credible evidence consistent with Lackie's guilt must be accepted as true. Id. Further, we give the State the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. Therefore, it is our job to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss. 2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 13. Lackie was indicted under Section 97-3-7(2)(b) of the Mississippi Code Annotated, which states in part: "(2) A person *605 is guilty of aggravated assault if he . . . (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm."
¶ 14. Lackie argues that the State did not prove with direct evidence that Lackie was the one who actually cut Waltman, O'Neal or Graham. "[W]here a case is based wholly on circumstantial evidence, the state must prove [the defendant's] guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." Murphy v. State, 566 So.2d 1201, 1204 (Miss.1990).
¶ 15. Witnesses testified that Lackie was the only one seen with a knife. Lackie himself admits entering the fight with the knife, swinging it, and cutting some of the participants. When the knife was recovered at the scene, Lackie admitted that it was his. The evidence is also uncontroverted that the wounds suffered by all of the men were made by a knife or some sharp object.
¶ 16. Waltman stated that he had been fighting with Lackie, was hit from behind, fell to the ground, and when he got up, noticed that he had been stabbed. Sarah McKay testified that she witnessed Lackie "jump" on O'Neal and beat him. Gann corroborated McKay's testimony and stated that when he saw Lackie hitting O'Neal, he grabbed Lackie and pushed Lackie up against a truck. Graham admitted in his testimony that he did not know who had actually stabbed him, but that he had been fighting with Lackie and some other men prior to discovering blood on his hands.
¶ 17. Lackie further asserts that the State did not meet its burden to prove that Lackie knowingly and purposely assaulted Gann. However, several witnesses testified that they saw Gann and Lackie physically fighting. Gann himself saw Lackie holding the knife and stated that Lackie swung at him, cutting Gann underneath his eye with the knife. Kevin Smith and Waltman further corroborated that they saw Lackie pull Gann's shirt over his head and hit Gann in the jaw.
¶ 18. Lackie asserted that his actions were done in self-defense, but several of the State's witnesses stated otherwise. Witnesses testified that they did not see a group of men jump on Lackie, as Lackie asserted. Rather, they maintained that Lackie voluntarily became involved in the altercation and was one of the initial aggressors. Therefore, the testimony presented was sufficient for a jury to determine the credibility of the witnesses, weigh all of the evidence, and make a determination that Lackie was guilty of aggravated assault. Accordingly, this issue is without merit.
B. Weight of the Evidence
¶ 19. Lackie also challenges the weight of the evidence. A motion for a new trial is addressed to the discretion of the trial court. Bush, 895 So.2d at 844(¶ 18). The motion should be granted only if the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Id. On review of the denial of a motion for a new trial, we view the evidence in the light most favorable to the verdict, and will reverse only in exceptional cases where the evidence preponderated heavily against the verdict. Id.
¶ 20. Although conflicts are present in the testimony given, the jury's verdict was not against the overwhelming weight of the evidence. As stated above, the State presented several witnesses who stated they saw Lackie actively engaged in the *606 fight, and some stated they saw Lackie with the knife.
¶ 21. Lackie's friend, Matthew Householder, gave a statement to the police in which he claimed that Lackie admitted to pulling a knife, but only to "get people off him so he could get back on his feet." Householder recanted that Lackie said that he did swing the knife, but did not know if he had cut anyone. Householder also identified Lackie's knife to the police when questioned. At trial, Householder stated that he did not see Lackie on the ground, but that he did see "several people gathered in a bunch." He assumed that Lackie was underneath the pile of people. Householder maintained that a group of boys attacked him and that during the fight, he was focused on getting himself out of the fracas. Householder was stabbed in the arm during the altercation, but did not know who stabbed him. When asked if Householder was in fear of his life and if so, would he have used deadly force, Householder stated that he would not have used deadly force because he did not think it was warranted.
¶ 22. Testimony was also given that Lackie pulled a shirt over Gann's head and then proceeded to stab the blinded victim. Smith and Waltman testified that they saw Lackie hit Gann in the face. Lackie himself admitted to wielding a knife while he was engaged in the fight. Moreover, no evidence was presented that the injuries sustained did not come from a knife or that any other participant had a knife. Therefore, we find this issue to be without merit.
II. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A JURY INSTRUCTION CONCERNING THE LESSER OFFENSE OF SIMPLE ASSAULT.
¶ 23. Lackie finally claims that he was entitled to a jury instruction for simple assault. We disagree. It is well settled that a lesser-included offense instruction is required only "where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt." Mackbee v. State, 575 So.2d 16, 23 (Miss.1990). Whether a lesser offense instruction should be given turns on whether there exists an evidentiary basis for it. Hutchinson v. State, 594 So.2d 17, 20 (Miss.1992).
¶ 24. Section 97-3-7 of the Mississippi Code Annotated provides for both simple and aggravated assault:
(1) A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm; . . .
(2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm. . . .
The maximum sentence for simple assault is six months in the county jail; for aggravated assault, it is not more than one year in the county jail or twenty years in the penitentiary.
¶ 25. Our supreme court has held that aggravated assault and simple assault are mirror images of one another, except that aggravated assault requires the intentional use of a deadly weapon. Hutchinson, 594 *607 So.2d at 19. This Court has echoed the supreme court's holding by stating that "the statutory scheme designed and worded as it is precludes an intentional assault with a knife from ever being simple assault." Taylor v. State, 763 So.2d 913, 916(¶ 10) (Miss.Ct.App.2000).
¶ 26. In Hutchinson, the court found that when an accused wields a deadly weapon and intentionally strikes his victim, he is not entitled to a lesser-included offense instruction for simple assault. 594 So.2d at 20. Hutchinson involved a defendant who was convicted of aggravated assault after he ended an altercation with a fellow bar patron by bearing and using a knife. The defendant challenged his conviction, contending that he was entitled to a jury instruction on the lesser-offense of simple assault. In affirming the conviction, the court concluded that the defendant's intentional use of the knife took the case out of the realm of simple assault under Mississippi Code Annotated Section 97-3-7(1), and placed it solely within the purview of aggravated assault under Section 97-3-7(2).
¶ 27. Lackie argues that the present case is distinguishable from Hutchinson because Lackie was simply outnumbered and negligently flourished his knife in order to scare away his attacker, whereas in Hutchinson, the defendant was the aggressor and intentionally stabbed a sole victim and also threatened the victim not to tell anyone. Therefore, Lackie maintains it is feasible that some or all of the victims in the present case were negligently struck by Lackie's knife or that in the commotion, other forces caused the brandished knife to injure the victims.
¶ 28. We find Lackie's argument to be without merit. First, the initial altercation began with O'Neal and Pruitt. Lackie admitted to voluntarily joining the fight, and intentionally opening his knife. Second, Lackie demonstrated to the jury how he wielded the knife and used it during the fight. He testified that he intentionally used the knife by thrusting it backwards in an attempt to get some of the men off of his back. A simple assault instruction would be proper only if he had negligently used the deadly weapon, such as in a scenario where he pulled out the knife and it flew out of his hands, accidentally injuring someone. The evidence presented in the record simply does not support a negligence theory.
¶ 29. Lackie also cites the case of Lee v. State, 469 So.2d 1225 (Miss.1985), in which our supreme court reversed and remanded for a new trial due to the failure of the trial court to grant a lesser-included offense instruction. In Lee, a prisoner, in an attempt to escape, overpowered a jail guard, struck him, and while trying to use the guard as a hostage, put a knife to the guard's throat and threatened to kill the guard. At trial, the prisoner, Lee, vehemently denied that he threatened anyone with a knife. Lee claimed that he had bribed the guard with money and jewelry in exchange for allowing him to escape, and that he never intentionally used the knife as a weapon against the guard. Although the guard's and the accused's accounts varied, the court found that by viewing the evidence in the light most favorable to the accused and taking all reasonable inferences in favor of the accused, Lee's testimony brought the case within the definition of simple assault.
¶ 30. We find Lee to be distinguishable from the present case because, as we stated above, no evidence was presented to establish a negligence theory. Lackie admitted that he used the knife intentionally, and even demonstrated to the court his version of how the stabbing occurred. Accordingly, we find the lower court's denial of a simple assault instruction to be without *608 error, and we affirm Lackie's conviction.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF FOUR COUNTS OF AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS EACH FOR COUNTS I, III, AND IV AND TWENTY YEARS FOR COUNT II, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCES IN COUNTS I, III, AND IV TO RUN CONCURRENTLY TO EACH OTHER AND CONSECUTIVELY TO SENTENCE IN COUNT II, PAY A FINE OF $500 ON EACH COUNT AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND PAY RESTITUTION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.