¶ 1. Robert Scruggs was found guilty by an Alcorn County Circuit Court jury of possession of cocaine with intent to sell. On appeal Scruggs argues that peremptory challenges were used against certain jurors for racial reasons, that evidence of a prior sale of cocaine was improperly admitted, that his offered jury instruction on the elements of the crime should have been substituted for the State's, and that a mistrial should have been declared after a witness referred to an audiotape of the drug sale that was destroyed and was not in evidence. Finding no error, we affirm.
 FACTS
¶ 2. The evidence consistent with the verdict is this. On July 21, 1997, Robert Scruggs and some friends were at a vacant lot in Corinth. On the lot were a large concrete slab and two old couches. Shortly after 5:00 P.M., undercover Ripley Police Officer Jeff Medlin and confidential informant Sherry Day went to the lot and purchased five rocks of crack cocaine from Scruggs using a marked one hundred dollar bill. Scruggs offered to sell them cocaine in powder form as well, but they refused. The sale was monitored by two other officers by the use of a body wire worn by Day. The equipment malfunctioned, and the monitoring officers did not hear nor tape the transaction. Medlin and Day reported back to narcotics agent Jeff Palmer at a post-buy meeting. Palmer received the rocks of cocaine and sealed them in an evidence bag. This is not the offense for which Scruggs was tried, but evidence of it was introduced.
¶ 3. About 37 minutes after the buy, Palmer along with other law enforcement officers went to the vacant lot. Scruggs was sitting on one of the couches. One of the officers, Ron Dickey, testified that when he approached Scruggs, he saw Scruggs drop something behind the couch. Dickey told Scruggs to get on the ground. Scruggs refused. Dickey then took his arm and tried to arrest him. After a struggle, which resulted in the couch being flipped off the concrete slab on which it was resting, Scruggs was handcuffed by Officer Dickey and placed in the patrol car. Another suspect also struggled with police and was arrested.
¶ 4. Dickey informed others about seeing Scruggs drop something behind the couch. Agent Palmer found a paper bag containing smaller packages of powder cocaine and crack cocaine. It was for possession of this cocaine with intent to sell that Scruggs was indicted, tried and convicted. A crack pipe was found on another part of the vacant lot. After Scruggs and the other suspect were transported to the Alcorn County Jail in the patrol car, Dickey found a small package of marijuana in the back seat where Scruggs had been sitting. Dickey turned over the marijuana and the contraband found at the lot to Palmer. The contraband in the paper bag later tested positively as cocaine at the Mississippi Crime Laboratory. Agent Palmer also recovered a one hundred dollar bill from Scruggs, which was identified as the bill that had been given Scruggs for cocaine.
 DISCUSSION Issue I: Peremptory challenges
¶ 5. There were 42 individuals in the jury pool, of whom only three were black. One black member of the pool was struck for cause by the court. Only one of the two other black jurors was reached prior to final selection. The State asked to strike that juror also for cause. A review *Page 820 
on the record for that challenge for cause appears. The State alleged that the juror was known to have been arrested and charged with sale of a weapon to a minor, a felony charge. Yet when all jurors were asked about prior felony charges, the juror had not admitted the arrest in the voir dire for this case nor in a previous case tried earlier in the week. The court refused to strike this juror for cause. When the challenges for cause were concluded, the trial judge told the attorneys to proceed with the peremptory challenges, apparently without the court's participation, and to give him a list of acceptable jurors by 10:30 that morning. No objection to that procedure was lodged.
¶ 6. The next section of the transcript is the trial judge's inquiry as to whether the parties had decided upon a jury. They announced that they had, subject to an objection to the use of the State's peremptory challenge on the one black juror. The use of peremptory challenges for racially discriminatory reasons is prohibited. Batson v. Kentucky, 476 U.S. 79, 88 (1986). The court stated that no prima facie case of discrimination had been shown, relying on the previous explanation by the State as to why they wanted to strike the juror for cause. The issue of a prima facie case is not resolved by noting the reason for the challenge but usually on whether there is a pattern of selective use of challenges in what might appear to be a race-based manner. Since a peremptory challenge was used against the only black reached in jury selection, and since the trial court accepted the strike because he stated that he knew the reason that it had been made, the appellate issue is whether this reason is either racial on its face or there is sufficient evidence that it was a pretext.
¶ 7. The trial judge is to place on the record the reason why he did not believe the strike was racially motivated. Hatten v. State,628 So.2d 294, 298 (Miss. 1993). That he did, in saying that the refusal to answer inquiries about felony arrest was a proper basis for the strike. Previous case law has upheld challenges that focused on educational background, general demeanor, and family members with criminal backgrounds. Lockett v. State,517 So.2d 1346, 1349 (Miss. 1987). The fact that the prospective juror himself had a criminal background and did not admit it is an adequate racially-neutral reason. The judge obviously did not consider it a pretext, and there is no evidence in the record to indicate that he erred.
¶ 8. Scruggs appears to argue that reasons that would not rise to the level of justifying a strike for cause are also insufficient for a peremptory strike. To the contrary, the two kinds of challenges work together. A proper challenge for cause may not always be accepted by the trial court, but conceptually at least all jurors against whom such challenges are valid should be removed. Therefore peremptory challenges are used against jurors who in one party's belief, whether for good, bad, idiosyncratic, or even puzzling reasons, should be removed from the jury. The key is that the reasons cannot be racially motivated. Chisolm v. State,529 So.2d 635, 639 (Miss. 1988).
¶ 9. We find no error in the trial court's acceptance of this peremptory challenge.
 II. Admission of evidence of prior sale
¶ 10. Scruggs made a pre-trial motion to suppress the evidence of the actual sale of cocaine to the undercover officers. To emphasize the factual context for the argument, we point out that this actual sale is not the basis of the prosecution. Scruggs was convicted for possession cocaine with intent to sell at the time of his arrest at the vacant lot, thirty-seven minutes after the actual sale.
¶ 11. Among the arguments that Scruggs made at trial was that the arrest was illegal as not being based on probable cause. Those arguments are not renewed as the appellate brief solely focuses on the interplay of Rules of Evidence 403 and *Page 821 
404(b). We confine ourselves to that focus also.
¶ 12. Scruggs alleges that evidence of the actual sale was proof of "other crimes, wrongs or acts," and consequently an adequate basis under Mississippi Rule of Evidence 404(b) must be shown for admission. The evidence may not be used to show the defendant acted in conformity with these bad acts. Id. The trial court found that evidence of the prior sale by Scruggs was material to showing Scruggs's intent to sell the drugs that he possessed when arrested. A central trial issue was whether the drugs found at the time of arrest, in the same location and thirty-seven minutes after the sale that officers testified had occurred, were possessed with the intent to sell. In essence, the evidence that the undercover officers' testimony had purchased drugs from Scruggs at his open-air market, helped confirm that he was still there with his inventory, available to sell drugs until he was arrested.
¶ 13. Among the proper bases to use evidence of other bad acts is to show intent. M.R.E. 404(b). The court on the record concluded that evidence of the prior sale was more probative than prejudicial under Rule 403, which requires the court to balance these considerations in deciding whether to admit evidence. "The decision of whether to admit evidence is left to a trial court's broad discretion." Brown v. State, 534 So.2d 1019, 1024-25 (Miss. 1988). We find no error in the decision.
¶ 14. The trial court also gave a limiting instruction, but it was not narrowly drawn. It gave the entire range of possible uses of other bad acts evidence by providing that this evidence was offered "in an effort to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." The jury was cautioned not to rely on the evidence "regarding whether or not this defendant is guilty or not guilty of the charge for which he is presently on trial." There was no objection to the instruction, though the evidence had earlier been the basis of an objection. An instruction is necessary, and absent objection to its breadth this one was sufficient. Smith v. State,656 So.2d 95, 99 (Miss. 1995).
 III. Jury instruction on the elements of the crime
¶ 15. Scruggs argues that the trial court should have adopted his suggested jury instruction outlining the elements of the crime of possession with intent to distribute, instead of using its own. In his brief, he fails to identify either instruction by number, but a search of the trial record yields two instructions on the elements of the crime, including one that was given (P-1) and an unnumbered instruction that was not.
¶ 16. The denied instruction offered by the defense was this:
 Robert Scruggs has been charged in Count No. 1 with possession of Cocaine with intent to sell, transfer or distribute.
 If you find from the evidence in this case beyond a reasonable doubt that:
 1. Robert Scruggs, on or about July 21, 1997, in Alcorn County
 2. Intentionally had in the defendant's possession
 3. Cocaine; and
 4. Robert Scruggs knew that it was cocaine, and
 5. At the time, Robert Scruggs intended to sell, transfer or distribute that cocaine to another person or persons, then you shall find the defendant guilty as charged.
 If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Robert Scruggs not guilty of Count No. 1.
¶ 17. This is the instruction that was given:
 The defendant, ROBERT SCRUGGS, has been charged by Indictment with the felony crime of Possession of Cocaine, *Page 822 
a controlled substance, with intent to sell, transfer or distribute. If you find from the evidence in this case beyond a reasonable doubt that the defendant, ROBERT SCRUGGS, did willfully, unlawfully and feloniously have in his possession a quantity of Cocaine, a Schedule II controlled Substance with intent to sell, transfer or distribute, then you shall find the defendant, ROBERT SCRUGGS, guilty as charged.
 If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant, ROBERT SCRUGGS, not guilty.
¶ 18. Scruggs argues that the instruction actually given was confusing and did not adequately instruct jurors as to the element of intent, leading them to believe that intent was automatically assumed. He refers to the given instruction as "more cumbersome."
¶ 19. Whether one jury instruction dealing with the elements of a crime is more succinct or constitutes a better literary effort than another is not a matter that should concern this court, unless the given instruction failed properly to instruct jurors of the elements of the crime in a manner that they could understand and such instruction was not given elsewhere in the jury instructions. We find no fault in the instruction that was given, and will not decide if the other was superior in some respects. Wordiness is to be avoided but is not grounds for reversal.
¶ 20. All the elements of the crime of possession of cocaine with intent to sell were present in the instruction, should have been understood by a reasonable jury, and the instruction was adequate.
IV. Audiotape of the drug sale transaction that was destroyed and was not in evidence.
¶ 21. Scruggs claims that a nonexistent audiotape was essentially entered into evidence through the testimony of Agent Palmer when he referred to it in testimony before the jury. Palmer stated that during his surveillance of the drug sale by Scruggs to the two undercover officers, he attempted to make an audiotape using a body wire worn by one of the purchasers. However, the transmission was of poor quality and the tape was unusable. Scruggs moved for a mistrial at this point in Agent Palmer's testimony, because the information obtained from the wire had not been provided to him in discovery.
¶ 22. A hearing was conducted outside the presence of the jury at which Agent Palmer explained what had occurred. There is some ambiguity as to whether the tape was even made. Palmer stated that he could not hear anything as he listened over speakers as the sale was occurring. "The tape was inaudible, what I was hearing over the speaker [was inaudible]. So, therefore, I did not make a tape." The agent also stated that the tape that would have recorded that sale was later taped over or destroyed. On cross-examination by the defense, Palmer clarified a statement that he had made in front of the jury. Then he had stated that the information received from the body wire was not useless because "we knew when they left from one location." Palmer at the separate hearing said that he never had a tape that captured any part of the sale. At some stage after the undercover officers left him and while they were en route to the vacant lot, "the tape went bad."
¶ 23. Palmer stated that the tape that was available to make the recording was never listened to, analyzed, transcribed, or otherwise later dealt with in any manner. The trial judge found this:
 It appears at this time that there is no tape and there has never been a tape. Therefore, it's not incumbent upon the State to continue this case. There is nothing before the jury that was talked about that was alleged to have been on the tape. There has been only mention of that it was inaudible. And because there is not a tape, there has never been a tape, the request for continuance is *Page 823 
denied. There is nothing exculpatory on it that, in the Court's opinion, because it was inaudible. And because it was inaudible, no continuance is necessitated in this case. Therefore, it appears to the Court that there has been no discovery violation. And because there has been no discovery violation, the motion for a continuance is overruled.
¶ 24. Scruggs based his motion for mistrial on the fact that "the tape had been mentioned in testimony but not provided to counsel for the defense." What was mentioned in testimony before the jury was information that Agent Palmer gleaned from listening in on transmissions from the body wire, faulty though they were. Allusions to a "tape" were eventually clarified. The only evidence about the tape is that it never recorded anything. If the recording equipment actually was running once the transaction began, it at most was recording silence or static. Furthermore, the testimony from Agent Palmer about transmissions over the body wire was elicited by the defense. Generally, a defendant cannot complain of damaging and inappropriate testimony if the testimony is in response to his questions. Hoops, 681 So.2d 521 at 528. We do not find it damaging, except to the jurors' opinion about the technical abilities of the law enforcement officers involved.
¶ 25. Granting or denying a mistrial is within the sound discretion of the trial judge. Hoops v. State, 681 So.2d 521, 528 (Miss. 1996). The trial judge is in the best position for determining the prejudicial effect of an objectionable remark. Id. "The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared." Id. For the appeals court to find error from a trial judge's failure to grant a mistrial, there must have been an abuse of discretion. Brent v. State, 632 So.2d 936, 941 (Miss. 1994). Finding none, we affirm.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO SELL, TRANSFER OR DISTRIBUTE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION AS A HABITUAL OFFENDER, WITH FINE OF $5,000.00 (SUSPENDED) IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO ALCORN COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.