763 So.2d 913 (2000)
Johnny Clay TAYLOR, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00454-COA.
Court of Appeals of Mississippi.
July 18, 2000.
*914 Martin M. Oden, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND IRVING, JJ.
BRIDGES, J., for the Court:
¶ 1. A grand jury in Lauderdale County indicted Johnny Clay Taylor for the aggravated assault of Richard Robinson. After a trial by jury, Taylor was convicted in the Circuit Court of Lauderdale County of aggravated assault. Upon sentencing Taylor, the Honorable Robert W. Bailey found him to be a habitual offender pursuant to Miss.Code Ann. 99-19-81 (Rev.1994) and sentenced him to twenty years in prison, with no suspension, reduction or possibility of early release. Taylor filed his timely appeal to this Court believing the following errors occurred at trial
I. THE TRIAL JUDGE ERRED IN REFUSING TAYLOR'S PROFFERED LESSER-INCLUDED-OFFENSE JURY INSTRUCTION
II. THE TRIAL JUDGE ERRED IN REFUSING TAYLOR'S PROFFERED SELF-DEFENSE JURY INSTRUCTION
¶ 2. Upon a thorough review of the record, it is the finding of this Court that the trial judge's refusal of the proffered jury instructions was well within his discretion.

FACTS
¶ 3. On October 12, 1997, Johnny Clay Taylor, Sam Close and Willie Holton stopped by Richard Robinson's house to "hang out". Previously unacquainted, Taylor and Robinson sat on the front porch and discussed mutual friends, football and work. To their surprise, they realized that each had been romantically involved with one Bobby Faye Holliday. Holliday apparently was a former love interest of Taylor and the current girlfriend of Robinson. After this seemingly benign conversation, Robinson spoke with Holliday by phone and repeated the substance of Taylor's earlier comments regarding Holliday. The record is unclear and the testimony conflicting as to exactly what Taylor said about Holliday or if anything he said could be construed as negative or insulting.
¶ 4. Immediately after her telephone conversation with Robinson ended, Holliday left her house accompanied by Felicia Johnson and drove to Robinson's residence, ostensibly to finish her laundry. Holliday enraged that he had spoken with Robinson about her, instantly confronted Taylor at Robinson's house. This confrontation *915 developed into a heated argument between Taylor and Holliday, complete with verbal barbs and minimal pushing and shoving by both parties. The physical nature of the encounter escalated, and Taylor responded by physically assaulting Holliday, grabbing and choking her around her neck. Bruises and scratches on her neck paid tribute to the violent nature of the fight. Johnson intervened and broke up the first scuffle.
¶ 5. A second altercation ensued between Holliday and Taylor. This time Robinson stepped in and pulled Taylor aside. Robinson ordered Taylor off of his property, and he left the premises accompanied by Holton and returned to Holton's house. Close, Holliday and Johnson remained with Robinson. Taylor then left Holton's house and returned to Robinson's house less than thirty minutes after the first brawl. Taylor approached Robinson, irritated at his interference in the earlier fight with Holliday. Taylor, looming over the seated Robinson, struck him with a hand held hatchet hidden under his jacket, hitting his ear and the back of his neck. Taylor then went on a tirade inside Robinson's house, breaking a telephone, a living room window and a car windshield.
¶ 6. Holliday managed to contact the police on the remaining undamaged telephone to report this crime in progress. Johnson testified that she was able to speak with Taylor and calm him down enough to apprize him of the impending arrival of the authorities. When the police arrived, Taylor fled the scene. Robinson was taken to the hospital where he received twenty-two stitches and lost one-third of his ear. The hatchet was never found.
¶ 7. Taylor testified in his defense and steadfastly denied that he ever returned to Robinson's house a second time, much less attacked Robinson with a hatchet. Taylor claims that any injury he inflicted on Robinson occurred when Robinson intervened in the quarrel he had with Holliday. Taylor testified that when Robinson forcibly removed him from contact with Holliday, Robinson was effectively choking him. Taylor testified that he grabbed a stick from the ground and hit Robinson against the head to loosen his grip from Taylor's throat. Taylor was the only witness to testify to this version of events as the others confirmed the version that included a second visit culminating with an assault with a hatchet.

STANDARD OF REVIEW
¶ 8. The Mississippi Supreme Court announced its standard of review in reviewing jury instructions in Coleman v. State, 697 So.2d 777 (Miss.1997). Speaking for the Court, Presiding Justice Sullivan said, "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Coleman v. State, 697 So.2d 777, 782 (Miss.1997) (citing Collins v. State, 691 So.2d 918 (Miss. 1997)).

LEGAL ANALYSIS

I. THE TRIAL JUDGE ERRED IN REFUSING TAYLOR'S PROFFERED LESSER-INCLUDED-OFFENSE JURY INSTRUCTION
¶ 9. Taylor asks this Court to find the trial judge in error for refusing to give the jury instruction on aggravated assault's lesser-included offense of simple assault. Under the guidance of Hutchinson v. State, 594 So.2d 17 (Miss.1992), we cannot. The defendant in Hutchinson cut a fellow patron in a bar fight with a knife. Hutchinson, 594 So.2d at 17. The issue in Hutchinson was whether or not the defendant was entitled to have the jury consider a charge of simple assault as a lesser-included offense to aggravated assault. Id. at 17. Comparing the statutes defining simple assault and aggravated assault, our supreme court found that the language in *916 each statute was identical to the other, with the exception of the added words "with a deadly weapon" in the aggravated assault statute. Id. The Court further held that the statutory scheme designed and worded as it is precluded an intentional assault with a knife from ever being simple assault. Id. It is not a far leap in logic to hold that the same assault with a hatchet would preclude an instruction on simple assault as well.
¶ 10. Taylor argues that the evidence presented at trial entitled him to an instruction on simple assault. "Lesser-included offense instructions should not be indiscriminately granted. Rather, they should be submitted to the jury only where there is an evidentiary basis in the record therefor." Lee v. State, 469 So.2d 1225, 1230 (Miss.1985). An evidentiary basis is established when a "rational" or "reasonable" jury could find the defendant not guilty of the principle offense charged yet find the defendant guilty of the lesser-included offense. Monroe v. State, 515 So.2d 860, 863 (Miss.1987).
¶ 11. The trial judge went through a thorough analysis of the evidence presented at trial when deciding which instructions should be presented to the jury. He reasoned that the State's aggravated assault case is based upon the "second appearance" Taylor made at the victim's house, an appearance which Taylor denies ever making. The only evidence presented at trial to support Taylor's version of the events of that October evening is his uncorroborated testimony. Although the trial court never explicitly said so, it is clear that Taylor's defense was not that he caused the damage to the ear with a stick, but that he never caused any damage at all. Taylor testified that, when he left the victim's house, the ear appeared normal.
¶ 12. Taking all of the evidence in the light most favorable to Johnny Clay Taylor as the reviewing standard in Jackson v. State, 551 So.2d 132, 146 (Miss. 1989), instructs us to do, we cannot say under the guiding principles announced in Hutchinson that a rational, reasonable jury could find Taylor not guilty of aggravated assault, but guilty of simple assault. Although the hatchet was never found, "the jury is the sole judge of credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Nicholson v. State, 523 So.2d 68, 70 (Miss.1988). This issue is without merit.

II. THE TRIAL JUDGE ERRED IN REFUSING TAYLOR'S PROFFERED SELF-DEFENSE JURY INSTRUCTION
¶ 13. Next, Taylor alleges that the jury was improperly instructed on the theory of his defense. The State offered instruction S-4 that was amended and given as C-10[1]. Shortly after this instruction was accepted by both parties without objection, Taylor offered instructions D-1[2] *917 and D-2[3], which the trial judge promptly denied. Taylor believes that because the verbatim language presented to the trial court in his instructions labeled D-1 and D-2 was not presented to the jury for consideration, his ability to adequately present his self-defense theory was irreparably damaged. We disagree.
¶ 14. The law is clear that it is unnecessary to charge the jury a second time on the law of self-defense and denying such repetitious instructions is not considered reversible error. Triplett v. State, 672 So.2d 1184, 1186 (Miss.1996). Jury instructions should not be reviewed in isolation, but rather read together, and if the jury is fully and fairly charged by other instructions, the refusal of similar instructions is well within the trial court's discretion. Eakes v. State, 665 So.2d 852, 871 (Miss.1995). The language used in instruction C-10 is almost identical to that used in instruction D-1. Since instruction C-10 was submitted to the jury for consideration, the jury was properly instructed on the theory of self-defense. There is no error here.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE TO TWENTY YEAR S AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF SUCH SENTENCE BEING REDUCED OR SUSPENDED NOR TO BE ELIGIBLE FOR EARLY RELEASE, IS AFFIRMED. ALL FURTHER COSTS OF THIS APPEAL ARE TAXED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.
NOTES
[1] Jury Instruction C-10

The Court instructs the Jury that in order to make an assault with a deadly weapon justifiable on the ground of self defense, the danger to the defendant must be actually present and urgent or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm and, in addition to this he must have reasonable grounds to believe that there [sic] imminent danger of such design being accomplished. It is for the Jury to decide the reasonableness of the ground upon which the Defendant acts.
[2] Jury Instruction D-1

The Court instructs that self-defense is a law of necessity. Every human has a right to defend himself against death or serious bodily harm. But in order to justify the use of deadly force in defense, it must appear that the person attacked was so situated and endangered that he honestly believed, and that he had reasonable grounds for believing, that he was in imminent danger of death or serious bodily harm, and that there was imminent danger of such design being accomplished.
If the action of Richard Robinson on October 12, 1997 gave Johnny Clay Taylor reasonable grounds to apprehend a design on the part of Richard Robinson to kill him or do him some great bodily harm, and the danger to Johnny Clay Taylor was either actual, present, and urgent, and Johnny Clay Taylor had reasonable grounds to apprehend that there was imminent danger of such design being accomplished, then Johnny Clay Taylor acted in self-defense, and you must find him not guilty.
It is for the jury to determine if the reasonableness of the grounds upon which Johnny Clay Taylor acted.
[3] Jury Instruction D-2

The Court instructs the jury that "flight" is a mode of escaping danger to which a party, under the laws of Mississippi, is not bound to resort to, so long as he is in a place where he has a right to be, and is neither engaged in unlawful act, nor the provoker of, nor the aggressor in, the combat. In such case, he may stand his ground and resist force by force, taking care that his resistance is not disproportionate to the attack.
In other words, if you find from the evidence that the defendant, Johnny Clay Taylor, was presented with a danger to his person by Richard Robinson, and was in a place where he was not the immediate provoker or aggressor, he is entitled to stand his ground and use such force that is reasonable to defend himself.