GRIFFIS, J.,
 

 for the Court:
 

 ¶ 1. Thornton Peterson, Jr., was convicted of possession of cocaine with the intent to distribute. Peterson was sentenced as a subsequent offender and a habitual offender to sixty years in the custody of the Mississippi Department of Corrections (“MDOC”). He argues that: (1) the circuit court erred by denying his motion for a directed verdict at the close of the State’s evidence; (2) the circuit court failed to admit the parties’ stipulation in violation of Rule 901 of the Mississippi Rules of Evidence; (3) jury instructions D — 4 and D-6 were improperly refused; (4) the circuit court failed to properly instruct the jury on the meaning of the terms and/or elements of the crime charged in the indictment; (5) the search warrant was invalid; (6) his motion to suppress was improperly denied; and (7) the circuit court improperly sentenced him as a habitual offender. We find no error and affirm.
 

 FACTS
 

 ¶ 2. On August 10, 2001, the Indianola Police Department executed a search warrant for 407 Clay Street, Indianola, Mississippi. Several people were discovered inside the house, including Peterson. The police discovered that one of the rooms in the house was padlocked from the outside. The padlock was pried open and nineteen grams of crack cocaine, along with three razor blades, were found on a table inside the room.
 

 ¶ 3. The police detained Peterson as he attempted to flee the house. A set of keys was removed from his pocket. One of those keys opened the padlock to the room where the cocaine was found.
 

 ¶ 4. Officer Earnest Gilson testified that he had seen Peterson at the house on numerous occasions. An employee from the water department testified that water service to the house was turned on in Peterson’s name in 2000. It was later turned off in 2001 due to nonpayment. There is no record of water being reconnected to the house since that time.
 

 ¶ 5. Carolyn Webb testified that she was one of three tenants living in the house. All three tenants were addicted to cocaine. Webb answered the door for customers who came to the house to buy drugs. She helped Peterson in his drug business in exchange for drugs she used herself. She testified that Peterson was not a drug addict and did not live at the house. He was there often to do business. Webb stated that Peterson was the only person who had a key to the padlocked room where the cocaine was found. The room was off limits to the tenants. They all knew that if they tried to get into the room, Peterson would kick them out of the house. Webb was given immunity in exchange for her testimony against Peterson.
 

 ¶ 6. Peterson was indicted for the possession of nineteen grams of cocaine with the intent to distribute pursuant to Mississippi Code Annotated section 41-29-139(a)(1) (Rev.2009). The indictment charged Peterson as a subsequent offender under Mississippi Code Annotated section 41-29-147 (Rev.2009), and as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007). Peterson was convicted by a jury and sentenced as a subsequent and a habitual offender to serve sixty years in the custody of the MDOC. Prior to his conviction, Peterson was tried three times, each resulting in a mistrial.
 

 
 *672
 
 ¶ 7. Peterson filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. The motion was denied by the circuit court, and Peterson now appeals.
 

 ANALYSIS
 

 1. Whether there was sufficient evidence to support Peterson’s conviction.
 

 ¶8. Peterson argues that his motion for a directed verdict should have been granted at the close of the State’s evidence. Specifically, he claims that the State did not prove every element of the offense charged because Webb’s testimony was tainted by her illegal drug use. The State responds that the credibility of a witness is determined by the jury.
 

 ¶ 9. When reviewing the denial of motion for a directed verdict on an objection to the legal sufficiency of the evidence, we examine the evidence in a light most favorable to the State to determine whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted).
 

 ¶10. Section 41-29-139(a)(l) states that “it is unlawful for any person knowingly or intentionally ... [t]o sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance[.]” Here, the State proved that Peterson had constructive possession of the cocaine by “showing that the contraband was under the dominion and control of the defendant.”
 
 Williams v. State,
 
 971 So.2d 581, 587 (¶ 16) (Miss.2007) (citation omitted).
 

 ¶ 11. Peterson does not argue that any specific element was not shown by the State; instead, he merely argues that Webb’s testimony is not sufficiently credible to establish the elements of the charge. However, as the State argues, Webb’s credibility is an issue for the jury.
 

 ¶ 12. This Court recently decided a similar issue in
 
 Smith v. State,
 
 3 So.3d 815 (Miss.Ct.App.2009). There, Frank Smith argued that the jury’s verdict finding him guilty of possession with the intent to distribute was based on the testimony of two cocaine users; thus, it was against the overwhelming weight of the evidence.
 
 Id.
 
 at 817 (¶ 8). We held that: “As for Smith’s argument that [Daphne] Patterson’s and [Katrina] Lyons’s testimony was not credible, ‘the jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed.’ ”
 
 Id.
 
 at 818 (¶ 13) (quoting
 
 Ford v. State,
 
 737 So.2d 424, 425 (¶ 8) (Miss.Ct.App.1999)). The jury was informed that the witnesses were drug users and the jury was able to use that information as a factor to consider in weighing the testimony.
 
 Id.
 

 ¶ 13. Similarly, the jury in this case was informed that Webb was a cocaine addict. The jury was also aware that Webb received immunity for her testimony against Peterson. Her credibility was a determination for the jury. Viewing the evidence in the light most favorable to the State, we find that the circuit court did not err by denying Peterson’s motion for a directed verdict. Accordingly, this issue has no merit.
 

 2. Whether the circuit court failed to admit into evidence the parties’ stipulation that the substance found in the house was cocaine.
 

 ¶ 14. Peterson argues that the parties’ stipulation that the substance was cocaine did not waive the requirement that
 
 *673
 
 the stipulation itself be authenticated and admitted into evidence in accordance with Rule 901 of the Mississippi Rules of Evidence. The State responds that a stipulation to the admission of evidence does, in fact, waive the authentication requirement.
 

 ¶ 15. This Court reviews a circuit judge’s decision regarding the admissibility of evidence under an abuse-of-discretion standard of review.
 
 Edwards v. State,
 
 856 So.2d 587, 592 (¶ 12) (Miss.Ct.App.2003). “As long as the trial court remains within the confines of the Mississippi Rules of Evidence, it's decision to admit or exclude evidence will be accorded a high degree of deference.”
 
 Ellis v. State,
 
 856 So.2d 561, 565 (¶ 9) (Miss.Ct.App.2003) (citation omitted).
 

 ¶ 16. During the trial, the circuit judge read the following stipulation to the jury:
 

 While this witness is coming in, ladies and gentlemen, I’m going to read to the jury a stipulation. This is a fact. It is agreed by the parties. The reason they have this stipulation is to avoid having to call a witness where the witness’[s] testimony is not really in dispute, and I’m going to read the stipulation at this time. “It is hereby stipulated and agreed by and between the State of Mississippi and Thornton S[h]ug Peterson, Jr., that the substance contained in Exhibit S-3 was sent to the Mississippi Crime Laboratory in Jackson, Mississippi; that the seal of the packaging was unbroken; that the substance was tested by Tara Milan, a forensic scientist; that the substance is cocaine, a Schedule 2 controlled substance; it had a weight of 19 grams. No further proof of these facts is required; that is, the jury shall accept this fact as being true.”
 

 The stipulation was marked as Exhibit C-18 for identification. Peterson argues that it cannot be used to support his conviction because the stipulation was merely marked for identification and the exhibit was not received into evidence.
 

 ¶ 17. Both parties agreed to the stipulation. The circuit judge read the words contained on the exhibit and referred to the stipulation as a “fact” agreed to by both parties. The reading of the stipulation to the jury effectively places the stipulation in evidence. Peterson’s counsel did not object to the stipulation for any reason, including the issue of authentication. Further, this Court has discussed the fact that the parties’ agreement to stipulate to the admission of evidence waives the usual authentication requirements.
 
 Fleming v. Floyd,
 
 969 So.2d 881, 885 (¶ 16) (Miss.Ct.App.2006) (citing
 
 Blakeney v. Hawkins,
 
 384 So.2d 1035, 1036 (Miss.1980)) (overruled on other grounds). Accordingly, this issue has no merit.
 

 3. Whether the circuit court erred by refusing to grant jury instructions D-j and D-6.
 

 ¶ 18. We review the jury instructions given as a whole to determine whether the refusal of a particular instruction was in error.
 
 Taylor v. State,
 
 763 So.2d 913, 915 (¶ 8) (Miss.Ct.App.2000). “[I]f the instructions announce the law of the case fairly and create no injustice, no reversible error will be found.”
 
 Id.
 
 (quoting
 
 Coleman v. State,
 
 697 So.2d 777, 782 (Miss.1997)). “A defendant is entitled to have jury instructions given which present his theory of the case[;] however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.”
 
 Poole v. State,
 
 826 So.2d 1222, 1230 (¶ 27) (Miss.2002) (quoting
 
 Smith v. State,
 
 802 So.2d 82, 88 (¶ 20) (Miss.2001)).
 

 A. Instruction D-U
 

 ¶ 19. Peterson contends that the circuit court erred in refusing jury instruction D^4, which states:
 

 
 *674
 
 The Court instructs the jury that at the outset of a trial the defendant, Thornton Peterson, Jr., is presumed to be wholly innocent of the whole crime charged. He is not required to prove himself innocent or put on any evidence at all before you. You must view the testimony in the light of that presumption which stays with the defendant, Thornton Peterson, Jr., throughout the trial of the case unless or until the evidence convinces you that the defendant, THORNTON PETERSON, JR., is guilty beyond a reasonable doubt of the crime for which he is charged in this case.
 

 Peterson claims that this instruction was especially necessary considering the previous mistrials and the untrustworthy testimony of Webb.
 

 ¶ 20. We agree with the circuit court’s finding that the presumption of innocence was already covered by the circuit court’s instruction on the burden of proof, which stated that:
 

 The law presumes every person charged with the commission of a crime to be innocent at the outset of the trial. This presumption places upon the State the burden of proving the defendant guilty of every material element of the crime which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty. The defendant is not required to prove his innocence.
 

 ¶ 21. Peterson cites
 
 Edwards v. State,
 
 630 So.2d 343, 344 (Miss.1994) for the proposition that a cautionary instruction regarding the testimony of an accomplice is mandatory in a drug-sale prosecution. He again argues the lack of credibility of Webb’s testimony. However, Webb was not Peterson’s accomplice. This Court has held that a cautionary instruction is not necessary where there is “no accomplice or co-defendant and the State’s evidence consisted of more than the confidential informant’s testimony.”
 
 Steen v. State,
 
 873 So.2d 155, 161 (¶ 19) (Miss.Ct.App.2004).
 

 ¶ 22. Here, the State offered testimony from several police officers in addition to Webb’s testimony. Again, the credibility of Webb’s testimony is a issue within the discretion of the jury. Therefore, we find that this jury instruction was properly denied.
 

 B. Instruction D-6
 

 ¶ 23. Peterson further contends that the circuit court erred in refusing jury instruction D-6, which states:
 

 The Court instructs the jury that during the course of this trial you have heard offers of proof that the Defendant allegedly committed other bad acts at times before the allegations charged in this case. You cannot, in any way, consider offers of proof of allegations of previous bad acts by the defendant as any evidence that he acted the same way on August 10, 2001.
 

 ¶ 24. Peterson claims that a limiting instruction was necessary to warn the jury that they were only to consider evidence of other crimes for the purposes of demonstrating Peterson’s intent as to the drugs in his possession. The State argues that this instruction is a misstatement of the law, and it was properly denied by the circuit court.
 

 ¶ 25. Rule 404(b) of the Mississippi Rules of Evidence states that evidence of other crimes, wrongs, or acts is allowed to show intent of a party. Instruction D-6 is a misstatement of this rule because it instructs the jury that it cannot consider allegations of the defendant’s prior bad acts “in any way.” It is not a limiting instruction warning the jury that such evidence may be used merely for the issue of intent. Counsel for Peterson failed to re
 
 *675
 
 quest a limiting instruction. The burden to request a Rule 404(b) limiting instruction was upon Peterson’s counsel.
 
 Brown v. State,
 
 890 So.2d 901, 913 (¶36) (Miss.2004). “When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court,
 
 upon request,
 
 shall restrict the evidence to its proper scope and instruct the jury accordingly.”
 
 Id.
 
 (quoting M.R.E. 105).
 

 ¶ 26. We find that the circuit court did not err in failing to give a 404(b) limiting instruction because such instruction was never requested by counsel. Further, the court properly refused jury instruction D-6 because it was a misstatement of the law as it went beyond a mere limiting instruction and excluded evidence of Peterson’s bad acts for all purposes, including proof of his intent. Accordingly, this issue is without merit.
 

 k. Whether the circuit court failed to properly instruct the jury on the meaning of the terms and/or elements of the crime charged in the indictment.
 

 ¶ 27. Peterson argues that the jury was merely instructed as to the meaning of the word “possession” and not the other terms or elements of the crime charged. Specifically, he claims that the jury was not given guidance regarding the element of intent. The State responds that Peterson failed to object to the jury instructions on this basis, and jury instruction S-3 properly instructed the jury on the meaning of the elements of the crime charged in the indictment.
 

 ¶ 28. The jury instruction that Peterson now claims was insufficient is instruction S-3, which states:
 

 The Court instructs the Jury that in order to prove the Defendant was in ■possession of the controlled substance it is not necessary for the State to prove that he owned it or was in actual possession of it. Constructive possession may be shown by establishing that the cocaine was subject to Defendant’s dominion and control. If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, THORNTON “SHUG” PETERSON JR, was aware of the presence and character of the cocaine and was intentionally and consciously in possession of it, then it is your sworn duty to find the Defendant, THORNTON “SHUG” PETERSON JR, was in possession of the cocaine. You should then decide if the Defendant, THORNTON “SHUG” PETERSON JR, intended to sell, barter, transfer or deliver the said cocaine. If you find that he did have such intent, then it is your sworn duty to find the Defendant, THORNTON “SHUG” PETERSON JR, guilty as charged.
 

 ? 29. Counsel for Peterson objected to this jury instruction because its original form included language about a lesser-included offense; however, that language was removed by the circuit court and was not read to the jury. Peterson’s counsel made no objection based on the argument that this instruction did not sufficiently express the meaning of each element of the crime. This failure to timely object to the instruction at trial waives this issue on appeal.
 
 Steen,
 
 873 So.2d at 161 (¶ 25) (citation omitted).
 

 ¶ 30. Notwithstanding this procedural bar, we find that Peterson’s argument fails because the jury instructions as a whole were adequate. This issue was decided by this Court in
 
 Scruggs v. State,
 
 756 So.2d 817 (Miss.Ct.App.2000). Robert Scruggs argued that the instruction given by the circuit court did not adequately instruct the jurors on the element of intent.
 
 Id.
 
 at 822 (¶ 18).
 

 
 *676
 
 ¶ 31. The jury instruction given in
 
 Scruggs
 
 was almost identical to instruction S-l given in this case, which states:
 

 The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that on the date testified about, the Defendant, THORNTON “SHUG” PETERSON JR, did unlawfully, wilfully, knowingly and feloniously have and possess 19.0 grams of cocaine, a Schedule II controlled substance, with the intent to sell, barter, transfer or deliver the same to another, then it is your sworn duty to find the Defendant, THORNTON “SHUG” PETERSON JR, guilty as charged.
 

 Just as in
 
 Scruggs,
 
 this instruction contains all of the elements of the crime of possession of cocaine with the intent to distribute. The instruction was adequate and “should have been understood by a reasonable jury.”
 
 Id.
 
 at (¶ 20). Accordingly, this issue has no merit.
 

 5. Whether the search warrant was invalid.
 

 ¶ 32. Peterson claims that the search warrant was invalid; thus, the cocaine collected subject to the warrant and the warrant itself were improperly admitted into evidence. Specifically, he contends that Deputy Robert Moore of the Indianola Police Department failed to execute the return on the warrant, list all the evidence taken from the house, and make a return to the judge who issued the warrant. However, as the State argues, Peterson did not object to the admission of the warrant into evidence at either the suppression hearing or at the trial.
 

 ¶ 33. Peterson filed a motion to suppress the evidence seized in the search of the house. At the suppression hearing, he claimed that the search was illegal because the statement of underlying facts and circumstances used by Deputy Moore to obtain the search warrant was missing. Also, he claimed that the search warrant was stale because it was not served until two days after it was obtained. No argument was made about the authentication of the warrant, the return, or the inventory until this appeal.
 

 ¶ 34. Both the warrant and the cocaine were admitted at trial with no objection. The circuit judge is given great discretion in the admission of evidence. We cannot, on appeal, find error on the part of the circuit judge on an issue that was never presented to him at trial.
 
 McLendon v. State,
 
 945 So.2d 372, 383 (¶ 31) (Miss.2006). Accordingly, this issue has no merit.
 

 6. Whether Peterson’s motion to suppress was improperly denied.
 

 ¶ 35. Peterson argues that his motion to suppress the evidence obtained in the search should have been granted because the statement of underlying facts and circumstances used to obtain the warrant was misplaced and not available at trial.
 

 ¶ 36. “When reviewing a trial court’s ruling on the admission or suppression of evidence, [the appellate court] must assess whether there was substantial credible evidence to support the trial court’s findings. The admission of evidence lies within the discretion of the trial court and will be reversed only if that discretion is abused.”
 
 Id.
 
 at 379 (¶ 14) (citation omitted).
 

 ¶ 37. Circuit Judge Margaret Carey-McCray conducted the suppression hearing in this case. At that hearing, she considered the issue of the missing statement of underlying facts and circumstances. Judge Carey-McCray cited this Court’s ruling in
 
 Stubbs v. State,
 
 811 So.2d 384 (Miss.Ct.App.2001). In
 
 Stubbs,
 
 the affidavit giving rise to the search warrant was not produced.
 
 Id.
 
 at 388 (¶ 11). We
 
 *677
 
 found that it was sufficient that the circuit court held a suppression hearing and heard testimony from the requesting agent regarding the facts and circumstances submitted to the magistrate.
 
 Id.
 
 The circuit judge made an independent finding that probable cause existed to issue the warrant.'
 
 Id.
 

 ¶ 38. This is exactly what Judge Carey-McCray did in this case. She heard testimony from Deputy Moore as to the underlying facts and circumstances used to obtain the warrant. She also heard testimony from Justice Court Judge John Bur-rell who issued the warrant. She found sufficient evidence to constitute probable cause for the warrant. Such finding was based on substantial credible evidence and did not constitute an abuse of discretion. As such, this issue has no merit.
 

 7. Whether the circuit court improperly sentenced Peterson as a habitual offender.
 

 ¶ 39. Peterson claims that he was improperly sentenced as a habitual offender because the State was allowed to amend the habitual-offender portion of his indictment just prior to sentencing. The State responds that the amendment was proper as it was to form and not to the substance of the indictment, and there was no prejudice to Peterson.
 

 ¶ 40. Peterson was indicted on December 28, 2001. He was convicted on February 19, 2004, following several mistrials. At that time, the State moved to amend the indictment. Peterson claims that this delay caused him prejudice. However, it is clear from the record that the amendment merely corrected the sentencing date of one of the underlying convictions contained in the habitual-offender portion of the indictment. The original indictment put Peterson on notice that the State planned to use his prior conviction to enhance his sentence in this case.
 

 ¶ 41. “[A] change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant’s case.”
 
 Alexander v. State, 875
 
 So.2d 261, 269 (¶ 31) (Miss.Ct.App.2004) (citations omitted). Further, this Court has held that:
 

 Rule 7.06(5) of the Uniform Rules of Circuit and County Court provides that “[fjailure to state the correct date shall not render the indictment insufficient.” Furthermore, Section 99-7-21 of the Mississippi Code allows the court to “cause the indictment to be forthwith amended” to cure any formal defect. Miss.Code Ann. § 99-7-21 (Rev.2000). “Although Rule 7.09 denies the trial court authority to make substantive amendments of indictments, the Mississippi Supreme Court has observed that amending the date of the alleged offense is a change of form only where time is not an essential element or factor in the indictment.”
 
 Givens [v. State],
 
 730 So.2d [81,] 87 (¶ 19) [(Miss.Ct.App.1998) ] (citation omitted).
 

 Id.
 
 at (¶ 33). The amendment to Peterson’s indictment did not alter Peterson’s defense in any way and was, therefore, proper.
 

 ¶ 42. Peterson further claims that the State did not prove the length of time Peterson served on his prior offenses. However, section 99-19-81 does not require that Peterson actually serve more than one year; instead, it merely requires that Peterson received a sentence for one year or more for two separate convictions.
 
 See Hewlett v. State,
 
 607 So.2d 1097, 1105 (Miss.1992) (holding that: “The fact that
 
 *678
 
 there was no actual incarceration does not affect the sufficiency of the sentences as evidence of habitual[-]offender status.”) Accordingly, this issue has no merit.
 

 ¶ 43. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AND SENTENCE AS A SUBSEQUENT OFFENDER AND A HABITUAL OFFENDER OF SIXTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PROBATION OR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT. CARLTON, J., NOT PARTICIPATING.