# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01215-COA

RANDY LEE RUSSELL A/K/A RANDY RUSSELL          APPELLANT

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/08/2013 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA AINSWORTH |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SEXUAL BATTERY OF A MENTALLY DEFECTIVE PERSON AND SENTENCED TO TWENTY-FIVE YEARS TO BE SERVED DAY-FOR-DAY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 11/08/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

BEFORE LEE, C.J., BARNES AND ISHEE, JJ.

ISHEE, J., FOR THE COURT:

¶1. In 2013, Randy Lee Russell was convicted by a jury in the Harrison County Circuit Court of sexual battery of a mentally defective person. Russell was sentenced to twenty-five years to be served day-for-day in the custody of the Mississippi Department of Corrections

(MDOC). Russell appeals, claiming the circuit judge improperly allowed the introduction of hearsay evidence under the tender-years exception to the hearsay rule. Russell argues that, while the victim was mentally defective by virtue of having the intelligence level of a child, she was not actually a child and, thus, the tender-years exception was inapplicable. Finding no error, we affirm the circuit court's judgment.

**STATEMENT OF FACTS**

¶2.     K.G.[1] was born in 1980 with polyps on her brain and cerebral palsy, causing her to remain childlike and unable to fully care for herself even as an adult. The record indicates that she has physical disabilities and her speech is impaired. The record also shows that she reads at a first-grade level and can only perform simple tasks and chores. Testing done in 2000 showed that she had an IQ level equivalent to a six-year-old. Later testing in 2008 reflected that her age equivalency was that of a seven-year-old.

¶3.     In 2008, K.G. was living with her aunt, Veronica Turner (Vicki). Vicki had been dating Russell on and off since 2003, and had even lived with him previously. However, in May 2008, Vicki and Russell broke up. Vicki subsequently moved out of Russell's house but continued to date him regularly. Around this time, Vicki worked at a convenience store, and K.G. and Russell were alone together at Vicki's home often.

¶4.     Vicki testified that in September 2008, she told K.G. that she and Russell were going for a motorcycle ride together. K.G. became uncharacteristically enraged and physically violent while stating, "My man." Vicki helped K.G. calm down and asked her to explain

---

[1] In cases involving sexual abuse of mentally defective persons, we protect the identity of the victims by using initials instead of names.

2

what she meant. In response, K.G. used vulgar language that Vicki had never heard from her before while describing sexual acts between herself and Russell.

¶5.     Shortly thereafter, Russell arrived at the house. Vicki confronted him about K.G.'s statements. According to Vicki, Russell admitted to having had sex with K.G. twice, but then said, "And if she wasn't such a slut and throwing it in my face, I wouldn't have done it." Vicki threw Russell out of the house immediately and went to console K.G. During the confrontation with Russell, K.G. had become despondent and began crying. After Russell left, K.G. continued crying and told Vicki, "He's a liar. Me not a slut." Vicki continued to console K.G., telling her it was not her fault. However, in the days after the confrontation, K.G. repeatedly apologized to Vicki and asked Vicki if she was mad at her. Vicki assured K.G. that she was not mad at her and encouraged her to go further into detail regarding the situation. K.G. eventually admitted to Vicki that she and Russell had engaged in intercourse three times and that it was painful.

¶6.     Vicki reported the incident to the local authorities, who arrested Russell. A jury trial took place in 2013. During K.G.'s testimony, she stated that she and Russell were naked in Vicki's bedroom and he touched her "private" in the "front" and he put his "private" in her and "moved it around." She testified that this occurred three times while Vicki was at work and that it hurt each time. Vicki's testimony regarding what K.G. had told her previously corroborated K.G.'s testimony at trial.

¶7.     George Allen, a neighbor, also testified at the trial. He stated that Russell came to his house one day after a fight with Vicki. Allen testified that Russell admitted to him that he

"did" K.G. and then said repeatedly, "I f***** her." Russell also testified at the trial and disputed the testimonies of K.G., Vicki, and Allen. By contrast, Russell claimed that he treated K.G. like a daughter and had never had sex with her.

¶8. Dr. Mark Carpenter, a psychologist and the director of clinical services at the Mississippi Regional Center where K.G. had been treated for her mental disabilities, also testified at the trial. He confirmed that the evaluation performed on K.G. at his clinic concluded that K.G. was functionally equivalent to a seven-year-old. He also testified that K.G. did not possess the requisite mental capacity to engage in a romantic or physical relationship.

¶9. After deliberations, the jury returned a guilty verdict against Russell for sexual battery of a mentally defective person. The circuit judge then sentenced Russell to twenty-five years in the custody of the MDOC. The sentence was to be served day-for-day. On appeal, Russell asserts that the circuit court erred in allowing Vicki to testify as to what K.G. told her pursuant to the tender-years exception to the hearsay rule. Russell argues that the tender-years exception should not apply to victims over the age of eighteen. Hence, he asserts that the tender-years exception was improperly applied in K.G.'s case since she was twenty-eight when she told Vicki that Russell had initiated intercourse with her.

**DISCUSSION**

¶10. It is well settled that this Court reviews a trial court's ruling on the admissibility of evidence using an abuse-of-discretion standard of review. *Peterson v. State*, 37 So. 3d 669, 673 (¶15) (Miss. Ct. App. 2010) (citing *Edwards v. State*, 856 So. 2d 587, 592 (¶12) (Miss.

Ct. App. 2003)). "As long as the trial court remains within the confines of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference." *Id.*

¶11. Russell claims that Vicki should not have been allowed to testify under the tender-years exception regarding statements made by K.G. The tender-years exception is outlined in Mississippi Rule of Evidence 803(25) as follows:

> A statement by a child of tender years describing any act of sexual contact with or by another is admissible if: (A) the court—after a hearing outside the jury's presence—determines that the statement's time, content, and circumstances provide substantial indicia of reliability; and (B) the child either:(i) testifies; or (ii) is unavailable as a witness. . . .

The comment to Rule 803(25) states that "the exception should not be necessarily limited to a specific chronological age. In appropriate cases, the exception might apply when the declarant is chronologically older than fourteen years, but the declarant has a mental age less than fourteen years."

¶12. The Mississippi Supreme Court has held that a rebuttable presumption exists for a child under twelve years of age to be considered a "child of tender years," and that victims over twelve years of age must be analyzed on a case-by-case basis. *Veasley v. State*, 735 So. 2d 432, 436-37 (¶16) (Miss. 1999). However, the supreme court also noted that the determination of whether a victim over twelve is a child of tender years should be "based on a factual finding as to the victim's mental and emotional age." *Id.* at 437 (¶16).

¶13. Russell does not challenge whether the statements provided substantial indicia of reliability, and it is undisputed that K.G. testified at the proceedings. Hence, the only issue

for our review is whether K.G. qualified as a "child of tender years" based on her mental disabilities. As seen in the comments to Mississippi Rule of Evidence 803(25) and in *Veasley*, the phrase "child of tender years" is not an indication that a chronological age is the exclusive factor for analyzing the applicability of the tender-years exception. The mental and emotional age of a victim must be taken into account.

¶14. The circuit court in K.G.'s case properly considered her mental, emotional, and chronological age. In a tender-years hearing on the record held outside the presence of the jury, the circuit judge was presented with testimony from Dr. Carpenter, K.G., and Vicki. Dr. Carpenter testified that K.G.'s IQ was only 55, and that her functional equivalent was that of a child at seven years and two months of age. Likewise, Dr. Carpenter noted that romantic or physical relationships were not allowed at his clinic for patients with similar mental incapacities as K.G. because the patients would be unable to understand the physical and emotional consequences associated with such relationships.

¶15. K.G.'s testimony during the hearing consisted of one-word answers. K.G. was only able to respond affirmatively or negatively to most questions asked of her both on direct and cross-examination. While K.G. was entirely unresponsive to many questions, she confirmed, pursuant to a string of questions, that Russell had placed his "private" in her "front private" on three occasions and that it hurt her. She also admitted on cross-examination that Vicki was her primary caregiver, performing rudimentary daily tasks for her such as clothing her and cooking for her.

¶16. Vicki also testified regarding K.G.'s level of understanding and daily functioning.

6

She testified that K.G. is unable to complete basic adult tasks such as compile thoughts on paper or cook using a stove or oven. Vicki summarized K.G.'s abilities by stating: "She does laundry, takes care of her puppy. She's basically an eight-year[-]old child."

¶17. We find that these witnesses, in addition to the circuit judge's firsthand observations of K.G., provided an ample basis for a determination that K.G. should have been considered a child declarant, thereby allowing for invocation of the tender-years exception. Given the record before us, we cannot conclude that the circuit judge abused his discretion in this matter. This issue is meritless.

¶18. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF SEXUAL BATTERY OF A MENTALLY DEFECTIVE PERSON AND SENTENCE OF TWENTY-FIVE YEARS TO BE SERVED DAY-FOR-DAY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**